UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br>1718 Connecticut Ave., NW<br>Suite 200<br>Washington, DC 20009<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY<br>Washington, DC 20528<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552
(2012), for injunctive and other appropriate relief, seeking the release of agency records
requested by the Electronic Privacy Information Center ("EPIC") from the Department of
Homeland Security ("DHS").

2.     This lawsuit challenges the failure of DHS to disclose documents in response to
EPIC's July 10, 2012, Freedom of Information Act request. EPIC's FOIA Request sought agency
records related to specific communications shutdown procedures ("Standard Operating
Procedure 303" or "SOP 303") approved by the National Communications System. Defendant
has failed to comply with its statutory deadline and has failed to disclose a single record. EPIC
asks the Court to order immediate disclosure of all responsive records.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i) (2012). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) (2012).

## Parties

4.      Plaintiff EPIC is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C. EPIC conducts oversight of government activities and policies and analyzes their impact on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also maintains a popular Internet site, http://www.epic.org, which contains extensive information on current privacy issues, including documents obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public through its website and other media outlets. This Court recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5 (D.D.C. 2003).

5.      Defendant DHS is a Department of the Executive Branch of the U.S. government and an agency within the meaning of 5 U.S.C. § 552(f)(1). Until President Obama dissolved the NCS through Executive Order 13618 on July 6, 2012, DHS included a component called the National Communications System ("NCS"). In turn, the NCS oversaw the work of two sub-components: the President's National Security Telecommunications Advisory Committee ("NSTAC") and the National Coordinating Center ("NCC").

## FACTS
## NCS Approved Standard Operating Procedure 303

6.      In its 2006-2007 Issue Review, the NSTAC revealed that it had approved SOP 303, although the details of SOP 303 were not released to the public.

7.      The Issue Review explained that SOP 303 codifies "a shutdown and restoration process for use by commercial and private wireless networks during national crises."

8.      The Issue Review further explained that SOP 303 would be implemented under the coordination of the NCC

9.      The decision to shut down service would be made by State Homeland Security Advisors or "representatives of the DHS Homeland Security Operations Center," but would require the permission of the NCC. The Review states, "Once the request has been made by these entities, the NCC will operate as an authenticating body, notifying the carriers in the affected area of the decision."

10.      The Issue Review indicates that NCC will determine whether a shutdown is necessary by asking the requestor "a series of questions." The NCC will follow the same procedure in order to reestablish service "[a]fter making the determination that the shutdown is no longer required.

11.      On July 3, 2011, a Bay Area Rapid Transit ("BART") officer in San Francisco, CA, shot and killed a homeless man, Charles Hill. The officer alleged later that Hill had attacked him with a knife and that he had acted in self-defense.

12.      The death sparked a major protest against BART on July 11, 2011. Though the protests interrupted BART service at several transit stations, no one was injured.

13.      A second protest was planned one month later, on August 12, 2011.  However, this protest was cut short after BART officials cut off all cellular service inside four transit

3

stations for a period of three hours. This act prevented any individual on the station platform from sending or receiving phone calls, messages, or other data.

14.     A 2011 Report from the White House asserted that the National Security Council and the Office of Science and Technology Policy have the legal authority to control private communications systems in the United States during times of war or other national emergencies.

15.     On April 30, 2012, the Federal Communications Commission requested public comment on proposed procedures to guide "intentional interruption of wireless service by government actors for the purpose of ensuring public safety."

16.     On July 6, 2012, the White House approved an Executive Order seeking to ensure the continuity of Government communications during a national crisis. As part of the Executive Order, DHS was granted the authority to seize private facilities, when necessary, effectively shutting down or limiting civilian communications.

## EPIC's FOIA Request

17.     Paragraphs 1-16 above are hereby incorporated by reference as if set forth fully herein.

18.     On July 10, 2012, EPIC transmitted, via certified mail, a FOIA request to the Chief Privacy Officer/Chief FOIA Officer in the Privacy Office at DHS, seeking records ("EPIC's FOIA Request").

19.     EPIC's FOIA Request asked for the following agency records:

    a)      The full text of Standard Operating Procedure 303;

    b)      The full text of the pre-determined "series of questions" that determines if
            a shutdown is necessary;

4

        c)      Any executing protocols or guidelines related to the implementation of

Standard Operating Procedure 303, distributed to DHS, other federal

agencies, or private companies, including protocols related to oversight of

shutdown determinations.

    20.     In the Request, EPIC asked the DHS to expedite its response to the Request

because EPIC is primarily engaged in disseminating information and the request pertained to a

matter about which there was an urgency to inform the public about an actual or alleged

government activity. EPIC made this request pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II). EPIC

based such a request on the urgency for the public to obtain information about DHS' authority to

approve the shutdown of wireless networks in the United States. To illustrate this public interest

need, EPIC cited extensive news coverage of the July 6, 2012 Executive Order that granted DHS

expanded authority to seize control of private communications facilities during times of national

crisis, as well as coverage of numerous cybersecurity bills under consideration that would extend

DHS' cyber authority.

    21.     In the Request, EPIC also requested "News Media" fee status under the FOIA

based on its status as a "representative of the news media." EPIC further requested waiver of all

duplication fees because disclosure of the records requested will contribute significantly to

public understanding of the operations or activities of the government.

    22.     On July 24, 2012, DHS acknowledged receipt of EPIC's FOIA Request.

    23.     In its acknowledgment, DHS responded that it would conditionally grant a fee

waiver, based on a "sampling of the responsive documents received from the various DHS

program offices as a result of the searches conducted in response" to EPIC's Request.

5

24.     In its acknowledgment, DHS did not make a determination as to EPIC's request for expedited processing, but invoked a 10-day extension due to the "unusual circumstance" that EPIC's FOIA Request is "of substantial interest" to two or more components of DHS or another agency.

25.     DHS also indicated that the appropriate components had been queried.

26.     DHS assigned EPIC's FOIA Request reference number DHS/OS/PRIV 12-0598.

27.     DHS issued a final response by letter dated August 21, 2012. DHS informed EPIC that the agency was "unable to locate or identify any responsive records." DHS also notified EPIC of EPIC's right to appeal the decision within 60 days.

28.     On September 13, 2012, EPIC transmitted, via certified mail, an administrative appeal to DHS ("EPIC's Administrative Appeal"), appealing the sufficiency of the DHS' search regarding EPIC's FOIA Request.

29.     EPIC's Administrative Appeal also challenged DHS's practice of politically vetting FOIA requests and requested that DHS explain why the Request was "of substantial interest," what "substantial interest" indicated in this context, and which entities were consulted prior to the issuance of a final determination on the substance of EPIC's FOIA Request.

30.     EPIC's Administrative Appeal noted the reference number assigned to EPIC's FOIA Request by DHS.

31.     EPIC's Administrative Appeal renewed EPIC's request for "News Media" fee status and a waiver of all duplication fees.

32.     EPIC's Administrative Appeal also renewed EPIC's request for expedited treatment, and requested expedited treatment of the Appeal.

33.     In a letter dated October 25, 2012, DHS acknowledged EPIC's Administrative

Appeal.

34.     DHS assigned the Administrative Appeal reference number 2013-HQAP-00004.

35.     In its October 25 letter, DHS further stated that there would be delay in resolving

EPIC's Administrative Appeal, since DHS had received "a high number of FOIA requests" and

was experiencing a "backlog."

36.     As of November 23, 2012, DHS has failed to make a determination with respect

to EPIC's Appeal within twenty days after receipt of the appeal, as prescribed by 5 U.S.C. §

552(a)(6)(A)(ii) (2012).

37.     Through the date of this pleading, DHS has failed to produce any documents in

response to EPIC's FOIA Request.

38.     DHS's failure to respond within the twenty-day statutory limit constitutes a

constructive denial of EPIC's Appeal.

## Count I
## Violation of FOIA: Failure to Comply With Statutory Deadlines

39.     Paragraphs 1-38 above are hereby incorporated by reference as if set forth fully

herein.

40.     As described above, Defendant DHS' failure to respond to EPIC's Administrative

Appeal violated the statutory deadline imposed by the FOIA set forth in 5 U.S.C. § 552

(a)(6)(A)(ii).

41.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's

FOIA Request. 5 U.S.C. § 552(a)(4)(B).

42.     EPIC is entitled to injunctive relief compelling the release and disclosure of the

requested agency records.

**Count II**
**Violation of FOIA: Failure to Make Reasonable Efforts to Search for Responsive Records**

43.     Paragraphs 1-42 above are hereby incorporated by reference as if set forth fully herein.

44.     As described above, DHS's failure to make reasonable efforts to search for responsive documents violates FOIA, 5 U.S.C. § 552(a)(3)(C).

45.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(4)(B).

46.     EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

**Count III**
**Violation of FOIA: Unlawful Withholding of Agency Records**

47.     Paragraphs 1-46 above are hereby incorporated by reference as if set forth fully herein.

48.     As described above, DHS has failed to comply with statutory deadlines and failed to make responsive records available to EPIC.

49.     As a result of DHS' unlawful delay and failure to conduct a reasonable search, the agency has withheld responsive agency records from EPIC in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

50.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request.  5 U.S.C. § 552(a)(4)(B).

51.     EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A.   order Defendant to conduct a reasonable search for all responsive records;

B.   order Defendant to promptly disclose to Plaintiff responsive agency records;

C.   award Plaintiff its costs and reasonable attorneys' fees incurred in this action

pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

E.   grant such other relief as the Court may deem just and proper.


Respectfully submitted,

By: _____
Ginger McCall, Esquire (DC Bar #1001104)
David Jacobs, Esquire[*]
Julia Horwitz, Esquire[**]
ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: February 27, 2013

---

[*] David Jacobs is barred in New York State.

[**] Julia Horwitz is barred in Maryland.

9