## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
)
ELECTRONIC PRIVACY  )
INFORMATION CENTER,  )
          )
  Plaintiff,     )
          )
  v.       )  Case No. 1:13-CV-260 (JEB)
          )
DEPARTMENT OF HOMELAND )
SECURITY,     )
          )
  Defendant.    )
———————————————————————)

## MOTION FOR SUMMARY JUDGMENT

Defendant hereby moves for summary judgment under Federal Rule of Civil

Procedure 56.  The bases for this motion are explained in the accompanying

memorandum.

Dated:  June 28, 2013      Respectfully submitted,

               STUART F. DELERY
               Acting Assistant Attorney General

               RONALD C. MACHEN JR
               United States Attorney

               ELIZABETH J. SHAPIRO
               Deputy Director, Federal Programs
               Branch, Civil Division

               /s/ Justin M. Sandberg
               JUSTIN M. SANDBERG
               (Ill. Bar No. 6278377)
               Trial Attorney
               U.S. Dept. of Justice, Civil Division,
               Federal Programs Branch

20 Mass. Ave., NW, Rm. 7302
Washington, DC 20001
(202) 514-5838 phone
(202) 616-8202 fax
justin.sandberg@usdoj.gov

<u>Attorneys for Defendant</u>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ELECTRONIC PRIVACY                      )
INFORMATION CENTER,                     )
                                        )
    Plaintiff,                      )
                                        )
    v.                              )    Case No. 1:13-CV-260 (JEB)
                                        )
DEPARTMENT OF HOMELAND                  )
SECURITY,                               )
                                        )
    Defendant.                      )
_____)

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff Electronic Privacy Information Center (EPIC) has sued the Department of

Homeland Security (DHS) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  This

suit stems from EPIC's request for records detailing a process for shutting down wireless

networks to prevent, among other things, the remote detonation of bombs.  The complaint raises

three claims, but one – based on DHS's alleged failure to meet statutory deadlines, Compl. ¶¶

39-42 – has been rendered moot by the filing of this motion.  *See Atkins v. Dep't of Justice,* 1991

WL 185084, at *1 (D.C. Cir. Sept. 18, 1991); *Muttitt v. Dep't of State*, 2013 WL 781709, *9

(D.D.C. March 4, 2013).  The remaining claims raise two basic questions:  (1) did the agency

conduct an adequate search; and (2) did the agency properly withhold any responsive documents

that are subject to the FOIA.  The answer to both questions is "yes."  The agency conducted an

adequate search – it located the only document subject to the FOIA that is responsive to EPIC's

request – and has properly withheld portions of that document under Exemptions 6, 7(C), 7(E), 7(F).

As DHS located the sole document responsive to the FOIA request, EPIC's challenge to the sufficiency of the search should be dismissed as moot.  In the alternative, the Court should enter judgment in DHS's favor because it conducted a search reasonably calculated to locate responsive records.  The Court should also enter judgment in DHS's favor with respect to its decision to withhold the document in part.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

EPIC submitted a FOIA request to DHS seeking three specific categories of records:

1) The full text of Standard Operating Procedure 303;
2) The full text of the pre-determined 'series of questions' that determines if a shutdown is necessary; [and]
3) Any executing protocols or guidelines related to the implementation of Standard Operating Procedure 303, distributed to DHS, other federal agencies, or private companies, including protocols related to oversight of shutdown determinations.

EPIC FOIA Request, July 10, 2012, at 3 (attached as Ex. 1).  Generally speaking, Standard Operating Procedure (SOP) 303 describes a "'shutdown and restoration process for use by commercial and private wireless networks during national crisis.'"  *Id.* (quoting the National Security Telecommunications Advisory Committee [NSTAC], NSTAC Issue Review 2006-07 at 139 (2007) available at http://www.ncs.gov/nstac/reports/2007/2006-2007%20NSTAC%20Issue % 20Review.pdf.).  More specifically, SOP 303 details a process for the "deactivation of wireless networks" to "deter the triggering of radio-activated improvised explosive devices." Declaration of James V.M.L. Holzer, Senior Director of FOIA Operations for the DHS Privacy Office, June 28, 2013, ¶ 25 (attached as Ex. 2).

---

[1] DHS is providing EPIC with the non-exempt portions of the record today.

DHS conducted a search for responsive documents subject to the FOIA but initially located none.  Letter from Mia Day, DHS FOIA Program Specialist, to Amie L. Stepanovich, Assoc. Litigation Counsel, EPIC, Aug. 21, 2012 (attached as Ex. 3).  (These searches are described below and in the in the attached Holzer Declaration.)   EPIC appealed the agency's determination that there were no responsive documents subject to the FOIA, arguing that DHS had failed to perform an adequate search. EPIC Admin. Appeal, Sept. 13, 2012 (attached as Ex. 4).  On appeal, the Office of the Chief Administrative Law Judge for the U.S. Coast Guard, which handles certain FOIA appeals for DHS, concluded that DHS had not sufficiently demonstrated the adequacy of its search.  Decision Letter from Joanna Sherry, Attorney Advisor, Office of the Chief ALJ, to Stepanovich, March 25, 2013, at 1 (attached as Ex. 5).  The matter was remanded to the agency for further review.  *Id.*   After this administrative remand, DHS conducted additional searches.  The agency located the only responsive document subject to the FOIA – a copy of SOP 303.  Holzer Decl. ¶¶ 19, 21.  DHS is withholding large portions of this document under FOIA Exemptions 7(E) and 7(F), and smaller segments under Exemptions 6 and 7(C).

## **STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  FOIA actions are typically resolved on summary judgment. *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007).  With respect to a claim regarding the adequacy of a search, a court may enter summary judgment based solely on information in an agency declaration when it describes in reasonable detail a search reasonably calculated to uncover all

3

relevant documents. *Thornton-Bey v. Exec. Office for U.S. Attorneys,* 844 F. Supp. 2d 159, 163 (D.D.C. 2012). With regard to exemption claims, an agency declaration suffices when the declaration describes "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record [ ]or by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). Agency declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted).

## ARGUMENT

### I.     DHS Performed A Search Reasonably Calculated to Discover Responsive Documents

On summary judgment in a FOIA case, the agency must demonstrate that it has conducted an adequate search. To do so, it must explain the "scope and method of the search" in "reasonable detail[,]" but need not provide "meticulous documentation [of] the details of an epic search." *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982). The agency must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.* Moreover, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984) (italics in original); *see also Yelder v. Dep't of Defense,* 577 F. Supp. 2d 342, 344-46 (D.D.C. 2008). "[A] search need not be

4

perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  Conducting a "reasonable" search is a process that requires "both systemic and case specific exercises of discretion and administrative judgment and expertise." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

As a threshold matter, EPIC's challenge to the sufficiency of the search is moot.  A plaintiff must establish that the court has jurisdiction over each claim.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-54 (2006).  A claim is moot if there is no meaningful relief that a court can grant.  *United States v. Garde*, 848 F.2d 1307, 1309 (D.C. Cir. 1988).  Other than ordering DHS to more specifically describe the search that it already conducted, the only relief that the Court could grant to EPIC with regard to its sufficiency-of-the-search claim would be an order remanding the case to the agency and instructing it to perform a reasonable search.  *See People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178 n. 2 (D.D.C. 2011).  But such an order would not provide meaningful relief here because DHS has already located the only information sought by EPIC.  EPIC sought only SOP 303 and the two closely related categories of implementing documents (*i.e.*, those containing the full text of the authentication questions and any executing protocols).  EPIC FOIA Request at 3 (attached as Ex. 1).  It did not seek drafts of these documents, internal emails discussing these documents, or anything else.  *See id*.  DHS located SOP 303, which contains all three categories of records sought by EPIC.  As the Holzer declaration explains, the component of DHS that authored the document, and which implements it, stated that "there are no other documents that contain either the full text of the questions or any executing protocols or guidelines."  Holzer

5

Decl. ¶ 19.  Thus, DHS found the documents requested by EPIC, there is nothing left to search for, and the claim is moot.

In any case, DHS performed a search reasonably calculated to produce the information requested.  Upon receiving the FOIA request, DHS's Privacy Office, which directs the agency's FOIA operation, contacted the four components of the agency most likely to have responsive records:  (1) the DHS Management Directorate, (2) the Office of the Chief Information Officer (OCIO), (3) the Under Secretary for Management, and (4) the National Protection and Programs Directorate (NPPD).  Holzer Decl. ¶¶ 10, 12.  The Management Directorate and the Under Secretary's offices were contacted because each office has a "broad portfolio" of responsibilities and, consequently, "often will know about a policy, procedure or initiative."  *Id.* ¶¶ 12, 13.  The Privacy Office contacted the OCIO because the request related to communications and that office "is often involved in, and consulted on, information and communication issues."  *Id.* ¶ 13.  Finally, the Privacy Office contacted the NPPD because the FOIA request specifically mentioned a former organization within the NPPD, namely, the National Communications System, and a current organization within the NPPD, the National Coordinating Center for Communications.  *Id.* ¶10; EPIC FOIA Request at 1 (attached as Ex. 1).

The Management Directorate, the OCIO, and the Under Secretary' s office each conducted searches for responsive records.  "These offices do not have one database to search for records that are responsive to [FOIA] . . . requests."  Holzer Decl. ¶ 15.  Thus, each searched "shared computer drives, Share Point sites, and emails for information about the requested records."  *Id.*  As the declaration explains, "[t]hese are the storage places where DHS employees would typically place information about the products they are working on as well as copies of any final products . . . ."  *Id.*  They searched using the search terms "Standard Operating

Procedure 303" and "SOP 303."  *Id.*  None of the offices located a record subject to the FOIA

responsive to EPIC's request.  *Id.* ¶ 16.

The NPPD initially declined to search, stating that it had no records responsive to the

request.  Holzer Decl. ¶ 11**.**  After the ALJ remanded the matter to the agency in response to

EPIC's administrative appeal, the Privacy Office again approached the NPPD.  *Id.* ¶ 19.  At that

time, the NPPD recognized that it had erred in responding to the Privacy Office's initial inquiry:

The NPPD had confused the documents sought by EPIC's request with those sought in a

different, but similar, request submitted by another party.  *Id.* ¶ 11.  The NPPD then searched and

located a copy of SOP 303.  *Id*. ¶ 19.  It also recognized that SOP 303 contained all three

categories of information sought by EPIC, and that no other document contained these narrow

categories of information.  *Id.* ¶¶ 19, 21.

This description of the search, along with the additional details included in the

declaration, establish that DHS conducted a search reasonably calculated to locate the

information requested.  The Holzer declaration identifies the DHS components most likely to

have responsive material; the reason those components were likely to have responsive material;

the general processes employed in conducting the search for documents, including the search

terms used; and the record located – the SOP.  The declaration also explains that DHS concluded

its search after locating the SOP because it is the only potentially responsive record; no other

records contain the narrow categories of information sought by plaintiff.  Concluding the search

at that point was reasonable because "the reasonableness of an agency's search [is] based on

what the agency knew at its conclusion rather than what the agency speculated at its inception,"

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), and at the conclusion, the

agency knew that it had the SOP and that "are no other documents that contain the full text of the

questions or any executing protocols," Holzer Decl. ¶ 21. Thus, Mr. Holzer's declaration provides "in reasonable detail the scope and method of the search conducted by the agency [and] will suffice to demonstrate compliance" with FOIA. *Perry*, 684 F.2d at 127. DHS, through its various components, "made a good faith effort to search for the records requested," and "its methods were reasonably expected to produce the information requested," *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 294 (D.D.C. 2005) (internal quotations and citation omitted).

## II.      SOP 303 Is Exempt, in Part, from Disclosure

### A.   Exemption 7(E) Shields the Document Sought From Disclosure

DHS has properly withheld SOP 303 in part because releasing the withheld portions would reveal a technique for law enforcement, specifically, for preventing the use of wireless networks to detonate bombs that would endanger persons and/or property.[2]

Exemption 7 applies to records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "But it exempts such documents from disclosure only to the extent that production of the information might be expected to produce one of six specified harms." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987). The FOIA lists the harms in discrete subsections. Subsection 7(E) exempts documents or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In short, this is a two-part inquiry: DHS must "demonstrate[ ] both the threshold law enforcement purpose and the danger that at

---

[2] Count III of the complaint could be read to suggest that EPIC is entitled to summary judgment because DHS did not meet statutorily imposed deadlines. Even if DHS failed to meet the deadlines, this suggestion is wrong. *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 68 (D.D.C. 2003) ("[A] lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester.").

least one of the specified harms [– here, the one identified in 7(E) –] would flow from disclosure." *Keys*, 830 F.2d at 340.  DHS satisfies this burden.

To establish the first part of the inquiry, *i.e.*, that the document was compiled for law enforcement purposes, DHS need only make a colorable claim that there is a rational "nexus between the agency's activity" underlying the creation of the document and the agency's "law enforcement duties." *Id.*; *see also Tax Analysts v. IRS*, 294 F.3d 71, 76-79 (D.C. Cir. 2002).  The range of law enforcement purposes falling within the scope of Exemption 7 includes law enforcement activities designed to prevent crimes and terrorist attacks: "[S]teps by law enforcement officers to prevent terrorism surely fulfill 'law enforcement purposes,'" *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1272 (2011) (Alito, J., concurring);  *see also Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982) (including "the maintenance of national security" as a law enforcement purpose);  *Pub. Emp. for Envtl. Responsibility v. U.S. Section Int'l Boundary and Water Comm'n*, 839 F.Supp.2d 304, 327 (D.D.C. 2012) (shielding plans for responding to dam failures);  *U.S. News & World Report v. Dep't of the Treasury*, No. 84-2303, 1986 U.S. Dist. LEXIS 27634, at *5 (D.D.C. Mar. 26, 1986) (protecting Secret Service's contract specifications for President's armored limousine); *Living Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1318-20 (D. Utah 2003) (exempting from disclosure inundation maps, which show the effect of dam failure); *Asian Law Caucus v. DHS*, No. 08-00842, 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008) (protecting from disclosure documents with details about terrorism watch lists); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035-36 (N.D. Cal. 2005) (same); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181-82 (D.D.C. 2004) (approving withholding of "firearm specifications" and "radio frequencies" used by agents protecting Secretary of Commerce); *Voinche v. FBI*, 940 F. Supp. 323, 329, 332 (D.D.C. 1996) (allowing

the withholding of documents regarding the Supreme Court's security measures).  This makes sense because "[t]he ordinary understanding of law enforcement includes not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity and to maintain security."  *Milner*, 131 S. Ct. at 1272 (Alito, J., concurring).

What is more, courts defer to a law enforcement agency's assertion that information or documents were compiled for a law enforcement purpose because government agencies "typically go about their intended business."  *Pratt*, 673 F.2d at 417-18.   And "DHS . . . [is] unquestionably [a] federal law enforcement agenc[y]."  *Nat'l Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement Agency*, 811 F. Supp. 2d 713, 744-45 (S.D.N.Y. 2011).

DHS compiled SOP 303 for a law enforcement purpose.  Holzer Decl. ¶ 20 ("The SOP was compiled for a law enforcement purpose . . . .").  SOP 303, which was drafted by a component of DHS, is "a homeland security procedure primarily intended to efficiently and effectively deter the triggering of radio-activated improvised explosive devices . . . that would endanger life and property."  Holzer Decl. ¶¶ 20, 25.  As established by the numerous cases cited above, efforts to prevent terrorism, like the one enshrined in SOP, constitute an essential law enforcement activity.  Indeed, "[p]articularly in recent years, terrorism prevention and national security measures have been recognized as vital to effective law enforcement efforts in our Nation."  *Milner*, 131 S. Ct. at 1272 (Alito, J., concurring).  And there is a self-evidently rational "nexus" between this activity – *i.e.*, instituting a process for shutting down wireless networks to prevent bombings – and the Department of *Homeland Security*'s law enforcement duties:  DHS exists to keep the country safe and preventing bombings does just that.  *See Keys*, 830 F.2d at

340.  Finally, even if there were some doubt about whether DHS compiled SOP 303 for a law

enforcement purposes (there is not), that doubt would be resolved in DHS's favor given that it is

a law enforcement agency.  *See Pratt*, 673 F.2d at 417-18.  Thus, DHS has made the threshold

showing for invoking Exemption 7 by demonstrating that SOP 303 was "compiled for law

enforcement purposes."  5 U.S.C. § 552(b)(7).  The inquiry, then, moves to step two, establishing

the existence of the harm described in subsection 7(E).

Exemption 7(E) protects law-enforcement documents that "would disclose techniques

and procedures for law enforcement investigations or prosecutions, or would disclose guidelines

for law enforcement investigations or prosecutions if such disclosure could reasonably be

expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) protects

from disclosure techniques and procedures used to prevent and protect against crimes, as well as

techniques and procedures used to investigate crimes after they have been committed.  *See, e.g.,*

*U.S. News & World Report*, 1986 U.S. Dist. LEXIS 27634, at \*5-6.  Exemption 7(E) does not

require a particular determination of harm that would result from disclosure of specific records or

information; rather, the exemption categorically protects information related to law enforcement

techniques.  *See Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501

(D.D.C. 1997) ("Exemption 7(E) provides categorical protection to information related to law

enforcement techniques."); *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991),

*aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

Releasing SOP 303 would result in the disclosure of a law enforcement technique.  The

technique at issue here is DHS's technique for coordinating an orderly process for disabling a

wireless telecommunications network to prevent, among other things, the use of the network to

remotely detonate an explosive device.  Holzer Decl. ¶ 25.  "SOP 303 establishes a protocol for

verifying that circumstances exist that would justify shutting down wireless networks . . . [and] provides a step-by-step process for the orderly shut-down of wireless networks following verification of the facts and appropriate weighing of the circumstances." *Id.* This is undoubtedly a technique, *i.e.*, a "procedure" or "a particular way of doing or of going about the accomplishment of something." *See* Webster's Third New International Dictionary (1986). And while such a technique might not fit within some crabbed notions of law enforcement techniques, "[i]t is inconceivable . . . that Congress meant to afford [preventative law enforcement] activities any less protection from disclosure simply because they do not fit within the traditional notion of investigative law enforcement techniques. Indeed, it is difficult to imagine agency procedures or techniques more deserving of protection." *U .S. News & World Report*, 1986 U.S. Dist. LEXIS 27634, at *6-7.

### B.  DHS Has Properly Withheld SOP 303 Under Exemption 7(F)

DHS has withheld portions of SOP 303 under Exemption 7(F) because releasing them, and thereby disclosing portions of the process for shutting down wireless networks to prevent bombings, could endanger individuals' physical safety.

Exemption 7(F) shields from disclosure records or information compiled for a law enforcement purpose, if its production "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "While courts generally have applied Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm." *Amuso v. U.S. Dept. of Justice*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009) (quotation marks omitted). Indeed, in *Living Rivers*, the court upheld the Bureau of Reclamation's invocation of Exemption 7(F) over inundation maps, which described the effects

of dam failures for the areas downstream from the Hoover and Glen Canyon Dams, because those maps could be used to aid terrorist attacks on the dams that would jeopardize the downstream population.   272 F. Supp. 2d at 1321-22.  Importantly, "[w]ithin limits, the Court[s] defer[ ] to [an] agency's assessment of danger."  *Amuso*, 600 F. Supp. at 101.

DHS properly withheld SOP 303 because its disclosure could reasonably be expected to endanger the physical safety of individuals near unexploded bombs.  DHS has already established that it compiled SOP 303 for law enforcement purposes.  *See* § II.A above.  Thus, it need only demonstrate that releasing SOP 303 could reasonably be expected to endanger the physical safety of any individual.  5 U.S.C. § 552(b)(7).  SOP 303 describes a procedure for shutting down wireless networks to prevent bombings that would endanger lives.  Holzer Decl. ¶ 25.  Releasing information regarding this protocol would enable "bad actors" to blunt its usefulness, perhaps even by insinuating themselves into the process.  *Id.* ¶ 26.   Neutering this protocol could reasonably be expected to endanger the physical safety of those near a bomb by increasing the chances that the process will fail and the bomb will explode.  "Given that disclosure of the requested information could reasonably lead to circumvention of or interference with a procedure aimed at preventing the triggering of improvised explosive devices, there is a reasonable expectation that disclosure could reasonably endanger the lives or physical safety of the general public."  *Id.*  This assessment of danger by DHS, a law enforcement agency, is eminently reasonable and deserving of deference.  *See Amuso*, 600 F. Supp. at 101.

C.  DHS Properly Withheld Information in SOP 303 Under Exemption 7(C) and Exemption 6

DHS has withheld from the disclosure the names, direct-dial telephone numbers, and email addresses of state homeland security officials to protect their personal privacy.  Holzer Decl. ¶¶ 23-24**.**  These withholdings are justified under Exemptions 6 and 7(C).

13

Exemption 7(C) protects records or information compiled for a law enforcement purpose to the extent that the production of records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The D.C. Circuit has interpreted the term "files" in the context of Exemption 6 to encompass "not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."  *Judicial Watch v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006).  Both exemptions require the agency and the court to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  The only relevant public interest is the interest in knowing what the government is up to.  *Sussman v. U.S. Marshals Svc.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Nat'l Ass'n of Home Bldgs. v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002).

Though both exemptions require balancing, "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects."  *Braga v. FBI,* 2012 WL 6644356, at *5 (D.D.C. Dec. 21, 2012) (quotation marks omitted).  First, Exemption 6 protects files that, if released, would result in a "clearly unwarranted invasion of personal privacy"; Exemption 7 omits the word "clearly."  *Id.*  Second, Exemption 7 covers documents that, if released, "could reasonably be expected to constitute" an invasion of privacy, while Exemption 6 covers documents that "would constitute" an invasion of privacy.  *Id.*

14

The differences in these standards are irrelevant here, however, as DHS's withholding satisfies both exemptions.[3]  Releasing the names, direct-dial telephone numbers, and email addresses of state homeland security officials would invade their personal privacy by subjecting them to possible harassment, as well as targeting by bad actors.  Holzer Decl. ¶¶ 23, 24*; see Lazaridis v. U.S. Dep't of State*, 2013 WL 1226607, at *12 (D.D.C. March 27, 2013) (Exemption 7); *Judicial Watch*, 449 F.3d at 152-53 (Exemption 6); *Nat'l Right to Work Legal Defense & Education Fund v. U.S. Dep't of Labor*, 828 F. Supp. 2d 183, 192-93 (D.D.C. 2011) (Exemption 6).  And there is no public interest in the release of this information, as it does not provide information about what the government is up to.  *See* Holzer Decl. ¶¶ 23, 24; *Lazaridis*, 2013 WL 1226607, at *12 (Exemption 7(C)) ; *Nat'l Right to Work*, 828 F. Supp. 2d at 192-93 (Exemption 6).  Thus, these withholdings are proper.  *See Sussman*, 494 F.3d at 1115 (Exemption 7(c)); *Lazaridis*, 2013 WL 1226607, at *12 (Exemption 7(C)) ; *Nat'l Right to Work*, 828 F. Supp. 2d at 192-93 (Exemption 6).

## III.    The Agency Performed an Appropriate Segregability Analysis

The agency carefully reviewed SOP 303 and determined that portions of SOP 303 could be separated from the exempt sections of the documents and released.  Those non-exempt portions are being provided to EPIC.  No other segments of the document could be released without compromising the interests protected by the exemptions invoked by DHS.  Holzer Decl. ¶ 22**.**

---

[3] As discussed before, DHS has demonstrated that it compiled SOP 303 for law enforcement purposes).

## <u>CONCLUSION</u>

The Court should dismiss EPIC's adequacy-of-the-search claim as moot and enter

judgment in favor of DHS with regard to EPIC's challenge to the agency's withholding.  In the

alternative, the Court should enter judgment in favor of DHS with respect to all claims.


Dated:  June 28, 2013                        Respectfully submitted,

                                             STUART F. DELERY
                                             Acting Assistant Attorney General

                                             RONALD C. MACHEN JR
                                             United States Attorney

                                             ELIZABETH J. SHAPIRO
                                             Deputy Director, Federal Programs Branch,
                                             Civil Division

                                               /s/ Justin M. Sandberg
                                             JUSTIN M. SANDBERG
                                             (Ill. Bar No. 6278377)
                                             Trial Attorney
                                             U.S. Dept. of Justice, Civil Division,
                                             Federal Programs Branch
                                             20 Mass. Ave., NW, Rm. 7302
                                             Washington, DC 20001
                                             (202) 514-5838 phone
                                             (202) 616-8202 fax
                                             justin.sandberg@usdoj.gov

                                             <u>Attorneys for Defendant</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
ELECTRONIC PRIVACY                                  )
INFORMATION CENTER,                                 )
                                                    )
          Plaintiff,                                )
                                                    )
          v.                                        )          Case No. 1:13-CV-260 (JEB)
                                                    )
DEPARTMENT OF HOMELAND                              )
SECURITY,                                           )
                                                    )
          Defendant.                                )
_____)

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(h), Defendants submit this statement of material facts as to which no genuine issue exists.

1.  Plaintiff Electronic Privacy Information Center (EPIC) submitted a Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS) seeking three categories of records:

    1)  The full text of Standard Operating Procedure 303;
    2)  The full text of the pre-determined 'series of questions' that determines if a shutdown is necessary; [and]
    3)  Any executing protocols or guidelines related to the implementation of Standard Operating Procedure 303, distributed to DHS, other federal agencies, or private companies, including protocols related to oversight of shutdown determinations.

    EPIC FOIA Request, July 10, 2012 (attached as Ex. 1).

2.  Standard Operating Procedure (SOP) 303 is a document that details a process for the "deactivation of wireless networks" primarily to "deter the triggering of radio-

1

activated improvised explosive devices."  Declaration of James V.M.L. Holzer, Senior Director of FOIA Operations for the DHS Privacy Office, June 28, 2013, ¶ 25 (attached as Ex. 2).

3. Upon receiving the FOIA request, DHS's Privacy Office contacted the components of the agency most likely to have responsive records:  (1) the DHS Management Directorate, (2) the Office of the Chief Information Officer (OCIO), (3) the Under Secretary for Management, and (4) the National Protection and Programs Directorate (NPPD). *Id.* ¶¶ 10, 12.

4. The Privacy Office asked these components to search their files for responsive records. *Id.* ¶¶ 10, 12.

5. The Management Directorate and the Under Secretary's offices were asked to search their records because each office has a "broad portfolio" of responsibilities and, consequently, "often will know about a policy, procedure or initiative." *Id.* ¶¶ 12, 13.

6. The OCIO was asked to search its records because the request related to communications and that office "is often involved in, and consulted on, information and communication issues." *Id.* ¶ 13.

7. Each of three offices searched "shared computer drives, Share Point sites, and emails for information about the requested records" because "[t]hese are storage places where DHS employees would typically place information about the products they are working on as well as copies of any final products . . . ." Id. ¶ 15.

8. They searched using the search terms "Standard Operating Procedure 303" and "SOP 303." *Id.*

9. The NPPD initially declined to search, stating that it had no records responsive to the request. *Id.* ¶ 11.

10. DHS sent EPIC a letter stating that it did not locate any responsive records subject to the FOIA.   Letter from Mia Day, DHS FOIA Program Specialist, to Amie L. Stepanovich, Assoc. Litigation Counsel, EPIC, Aug. 21, 2012 (attached as Ex. 3).

11. EPIC appealed this determination, arguing that DHS failed to perform an adequate search.  EPIC Admin. Appeal, at 2-3, Sept. 13, 2012 (attached as Ex. 4).

12. On appeal, the Office of the Chief Administrative Law Judge for the U.S. Coast Guard, which handles certain FOIA appeals for DHS, concluded that DHS had not sufficiently demonstrated the adequacy of its search.  Decision Letter from Joanna Sherry, Attorney Advisor, Office of the Chief ALJ, to Stepanovich, March 25, 2013, at 1 (attached as Ex. 5).

13. The matter was remanded to the agency for further review.  *Id.*

14. After this administrative remand, the NPPD conducted a search of its files. Holzer Decl. ¶ 19

15. The NPPD located a copy of SOP 303.  *Id.*

16. The agency ended its search after concluding that SOP 303 contains all three categories of information sought by EPIC and that no other responsive documents exist.  *Id.* ¶¶ 19, 21.

17. The agency determined that the release of names, direct-dial telephone numbers, and email addresses of state homeland security officials contained in SOP 303 would constitute a clearly unwarranted invasion of personal privacy.   *Id.* ¶ 23.

18. Accordingly, DHS invokes Exemption 6 to justify this withholding.   Holzer *Id.* ¶¶ 22, 23.

19. The agency determined that SOP 303 is a record compiled for law enforcement purposes and that the release of release of the names, telephone numbers, and email addresses of state homeland security officials contained in SOP 303 could reasonably be expected to constitute an unwarranted invasion of personal privacy. *Id.* ¶¶ 20, 24.

20. Accordingly, DHS invokes Exemption 7(C) to justify this withholding.   *Id.* ¶¶ 22, 24.

21. The agency determined that SOP 303 is a record compiled for law enforcement purposes and that the release of portions of SOP 303 would disclose the techniques and procedures for law enforcement investigations.   *Id.* ¶¶ 20, 25.

22. Accordingly, DHS invokes Exemption 7(E) to justify this withholding.   Holzer *Id.* ¶¶ 22, 25.

23. The agency determined that SOP 303 is a record compiled for law enforcement purposes and the release of portions of SOP 303 could reasonably be expected to endanger the life or physical safety of an individual.   *Id.* ¶¶ 20, 26.

24. Accordingly, DHS invokes Exemption 7(F) to justify this withholding.   Holzer *Id.* ¶¶ 22, 26.

25. The agency determined that portions of SOP 303 are non-exempt, and it is

releasing those portions to EPIC.  *Id.* ¶ 22.


Dated:  June 28, 2013                          Respectfully submitted,

                                               STUART F. DELERY
                                               Acting Assistant Attorney General

                                               RONALD C. MACHEN JR
                                               United States Attorney

                                               ELIZABETH J. SHAPIRO
                                               Deputy Director, Federal Programs
                                               Branch, Civil Division

                                                 /s/ Justin M. Sandberg
                                               JUSTIN M. SANDBERG
                                               (Ill. Bar No. 6278377)
                                               Trial Attorney
                                               U.S. Dept. of Justice, Civil Division,
                                               Federal Programs Branch
                                               20 Mass. Ave., NW, Rm. 7302
                                               Washington, DC 20001
                                               (202) 514-5838 phone
                                               (202) 616-8202 fax
                                               justin.sandberg@usdoj.gov

                                               Attorneys for Defendant