**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:13-cv-00260-JEB ) |
| DEPARTMENT OF HOMELAND SECURITY | ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 54(d) and 5 U.S.C. § 552(a)(4)(E)(i),

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully moves for an award

of attorney's fees and costs reasonably incurred in the above-captioned matter. EPIC

submits the accompanying memorandum of points and authorities, with attached exhibits,

in support of this motion.

April 25, 2016                         Respectfully Submitted,

                                       MARC ROTENBERG (DC Bar #422825)
                                       EPIC Executive Director

                                       ALAN JAY BUTLER (DC Bar #1012128)
                                       EPIC Senior Counsel

                                       */s/ T. John Tran*
                                       T. JOHN TRAN (DC Bar #1027767)
                                       Electronic Privacy Information Center
                                       1718 Connecticut Ave. NW
                                       Suite 200
                                       Washington, DC 20009
                                       202-483-1140
                                       tran@epic.org
                                       *Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| | ) |
| ELECTRONIC PRIVACY INFORMATION CENTER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:13-cv-00260-JEB |
| | ) |
| DEPARTMENT OF HOMELAND SECURITY | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

This case arises out of EPIC's Freedom of Information Act ("FOIA") request to

the Department of Homeland Security ("DHS") for Standard Operating Procedure 303

("SOP 303"), the federal government's policy on disrupting cellular communications

networks. In 2012, amid reports that government officials disrupted cellphone service at a

peaceful protest in a San Francisco transit station, EPIC submitted a FOIA request to the

DHS for release of the secret procedure. After the agency failed to act on EPIC's request

by the statutory deadline, EPIC filed suit in this Court. The DHS then released to EPIC a

heavily redacted copy of SOP 303. Following a lengthy dispute over the agency's

claimed exemptions in this Court and the D.C. Circuit, the DHS released to EPIC another

version of SOP 303. This second version of SOP 303 contained new, previously withheld

information, which, were it not for EPIC's lawsuit, would have never seen the light of

day.

EPIC is eligible for and entitled to recover attorney's fees and costs for its work in

successfully obtaining SOP 303. *See* 5 U.S.C. § 552(a)(4)(E). The parties attempted to

negotiate a fee settlement, but were unable to reach an agreement. EPIC thus submits this

motion for attorney's fees and costs. EPIC's attorneys have spent a total of 446.5 hours

on this matter. Based on contemporaneously recorded billing records and applicable

billing rates in this jurisdiction, EPIC requests an award of $92,652.93 in attorney's fees

and $463.82 costs in this matter.

### FACTUAL BACKGROUND

In 2011, a Bay Area Rapid Transit ("BART") officer in San Francisco shot and

killed a homeless man named Charles Hill. Hill's death sparked protests against BART,

including one in 2011 that ended abruptly after BART officials cut off all cellular service

inside four transit stations for three hours. Compl. at ¶ 11, ECF No. 1. This act by public

officials to suspend a widely used communications network prevented everyone inside

the transit stations from sending or receiving phone calls, messages, emergency

notifications, and other transmissions. *Id.* at ¶ 13.

SOP 303, created by the DHS in 2006, describes the process for "verifying that

circumstances exist that would justify shutting down wireless networks." Def.'s Mot. for

Summ. J., Ex.2, Holzer Decl. ¶ 25 (ECF No. 10-2). SOP 303 also "establishes a

procedure by which state homeland security officials can directly engage with wireless

carriers, and it establishes factual authentication procedures for decision-makers." *Id.* at ¶

20. Until EPIC filed this lawsuit, the contents of SOP 303 were entirely secret. Compl. at

¶ 7.

In July 2012, following the cellphone shutdown at the BART station, EPIC

submitted a FOIA request to the DHS seeking the release of SOP 303, the series of

questions used to determine whether a shutdown is necessary, and any related protocols

or guidelines. Compl. at ¶ 18. The agency responded that it had conducted a

comprehensive search, but was unable to locate or identify any responsive records. *Id.* at

¶ 27. EPIC appealed the agency's failure to identify responsive records in September

2012. *Id*. ¶ 28. The DHS acknowledged EPIC's administrative appeal in October 2012

but failed to make a determination within the FOIA's twenty-day deadline. *Id*. at ¶¶ 33,

36.

In February 2013, EPIC filed suit in this Court. *See* Compl. The DHS then

conducted another search for responsive records and located SOP 303, the document

sought by EPIC. Pl.'s Opp'n and Cross-Mot. for Summ. J., Ex. 2, SOP 303 (ECF No. 11-

2). In June 2013, the agency released to EPIC a heavily redacted version of SOP 303,

invoking FOIA exemptions 7(E) and 7(F). Pl.'s Opp'n and Cross-Mot. for Summ. J. at 5,

ECF No. 11. Both parties filed summary judgment motions. This Court sided with EPIC,

rejected the agency's 7(E) and 7(F) claims, and granted summary judgment for EPIC. *See*

Mem. Op., ECF No. 19. The court stayed the order to allow DHS an opportunity to

appeal or to provide an alternative basis for withholding the records. *Id*. at 16.

The DHS filed a notice of appeal to the D.C. Circuit on January 13, 2014. ECF No. 22.

On February 10, 2015, the D.C. Circuit reversed this Court's ruling on Exemption 7(F),

and remanded the case to the district court to assess the segregability issue. *EPIC v. DHS*,

777 F.3d 518 (D.C. Cir. 2015). EPIC filed a petition for rehearing *en banc*, which was

ultimately denied. Pet. for Reh'g En Banc, *EPIC v. DHS*, 777 F.3d 518 (ECF No.

1544810). On remand, the Court held a status hearing and the agency agreed to produce

SOP 303 for review *in camera* to decide the segregability issue. The agency then released

to EPIC a reprocessed version of SOP 303, and disclosed portions of the document that

had been previously redacted. *See* Notice of In Camera Filing (July 6, 2015), ECF No. 25. This Court reviewed the document *in camera* and ruled that the DHS had released all reasonably segregable material. Min. Order (July 10, 2015). EPIC subsequently filed a Petition with the U.S. Supreme Court, seeking review of the D.C. Circuit ruling. Pet. for Writ of Certiorari, *EPIC v. DHS*, 777 F.3d 518 (ECF No. 1567986). Finally, after substantial briefing by EPIC, including a Reply to the agency's Opposition, the Supreme Court denied the petition in January 2016. Denial of Pet. for Writ of Certiorari, *EPIC v. DHS*, 136 S. Ct. 876 (2016).

EPIC has incurred substantial costs in this litigation. Since EPIC filed this lawsuit, EPIC's attorneys have spent a total of 446.5 hours working on this matter. Tran Decl. at ¶ 11. These hours are documented in the detailed and contemporaneous billing records prepared by EPIC's attorneys. *See* Aff. of Marc Rotenberg; Aff. of Ginger McCall; Aff. of Alan Jay Butler; Aff. of David Jacobs; Aff. of Julia Horwitz; Aff. of David Husband; Aff. of T. John Tran; Aff. of Aimee Thomson.

## ARGUMENT

EPIC is eligible for and entitled to recover fees it incurred to successfully obtain responsive records in this matter. The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This attorney fee inquiry is divided into two prongs: eligibility and entitlement. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Courts have consistently awarded fees and costs in FOIA cases in which EPIC has

substantially prevailed. *See, e.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 23 (D.D.C. 2015); *EPIC v. FBI*, 80 F. Supp. 3d 139 (D.D.C. 2015); *EPIC v. DHS*, 999 F. Supp. 2d 61 (D.D.C. 2013); *EPIC v. DHS*, 811 F. Supp. 2d 216 (D.D.C. 2011).

Because EPIC successfully obtained the relief sought in this matter—disclosure of SOP 303—the Court should find that EPIC is both eligible for and entitled to recover attorney's fees and costs. The Court should also award EPIC fees-on-fees for the costs it has incurred in pursuing the fee award.

**I. EPIC is eligible for and entitled to fees in this matter.**

   **A. EPIC is eligible for attorney's fees because it obtained SOP 303 as a result of the suit.**

A FOIA plaintiff who has "substantially prevailed" is eligible to recover attorney's fees and costs. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011). The FOIA provides that a plaintiff "substantially prevails" by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." § 552(a)(4)(E)(ii).

EPIC's suit caused a "voluntary or unilateral change in position by the agency" sufficient to establish that EPIC substantially prevailed. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012). A FOIA plaintiff substantially prevails when the "Defendant did not produce any documents until [after] Plaintiff filed his Complaint." *Poulsen v. DHS*, No. 13-CV-498, 2016 WL 1091060, at *3 (D.D.C. Mar. 21, 2016) (citing *EPIC v. FBI*, 72 F. Supp. 3d 338, 345 (D.D.C. 2014)). When EPIC submitted the FOIA request on July 10, 2012, the DHS had not made SOP 303 made public. Compl. ¶ at 18. The DHS did not release SOP 303 in response to the FOIA request or the FOIA

Appeal. *Id*. at ¶ 38. It was not until *after* EPIC filed this suit that the agency released SOP 303.

Moreover, the DHS's release of additional portions of SOP 303 was a "voluntary or unilateral change in position." *Compare* Pl.'s Mot. for Summ. J., Ex. 2, SOP 303 (ECF No. 11-2), *with* Notice of In Camera Filing, Ex. 1 SOP 303 Redacted, ECF No. 27. For more than two years—nearly the entirety of this litigation—the DHS withheld responsive material in SOP 303. When the agency subsequently produced a new version of SOP 303 and disclosed responsive material that EPIC had argued was unlawfully withheld, Br. for Pl.-Appellee at 27–31, *EPIC v. DHS*, 777 F.3d 518 (ECF No. 1501192), the DHS retreated from its original position. In so doing, the agency conceded that the additional material fell outside the scope of the claimed FOIA exemptions, thereby establishing a "voluntary or unilateral change in position." § 552(a)(4)(E)(ii)(II). Because EPIC obtained a copy of SOP 303 as a result of the DHS's voluntary change in position, EPIC is eligible for attorney's fees and costs.

EPIC also "substantially prevailed" when this Court agreed with EPIC's position on Exemption 7(E). *See* Mem. Op. at 7–9. In rejecting DHS's Exemption 7(E) claim, the Court found that "techniques and procedures for law enforcement investigations or prosecutions" apply only to acts by law enforcement officials and only "after or during the commission of a crime." *Id.* at 8. Although the Court found that SOP 303 met the threshold requirement of being "compiled for law-enforcement purposes," it concluded that the procedure did not include "techniques and procedures for law enforcement investigations or prosecutions." *Id*. at 6, 8. The Court underscored the distinction between "law enforcement purposes" and "law enforcement investigations," noting that Congress

deliberately chose to make the latter category narrower than the former. *Id*. at 7–8. In so

holding, the Court emphasized the need to follow FOIA's basic principle of promoting

disclosure over secrecy. *Id*. at 8.

Finally, the Court dismissed the DHS's *post hoc* attempt to characterize SOP 303

as an investigative method, finding that "'no ordinary speaker of the English language'

would describe SOP 303 . . . as an evidence-gathering technique." *Id*. at 9 (internal

citation omitted). Because the Court's reasoning in supporting EPIC's position on

Exemption 7(E) was left undisturbed by the D.C. Circuit, EPIC "substantially prevailed"

and is thus entitled to attorney's fees.

### B. EPIC is entitled to recover fees and costs under the D.C. Circuit's four-factor test.

If a FOIA plaintiff is eligible for attorney's fees and costs, the court must then

determine whether the plaintiff is entitled to those fees and costs. *Brayton*, 641 F.3d at

525. Courts in this Circuit employ a four-factor balancing test to determine a plaintiff's

fee entitlement. *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016). The four factors are:

1) "the benefit to the public, if any, deriving from the case"; 2) "the commercial benefit

to the plaintiff"; 3) "the nature of the plaintiff's interest in the records"; and 4) "the

reasonableness of the agency's withholding." *Id.* All four factors favor EPIC in this case,

and the Court should accordingly award reasonable attorney's fees and costs.

The first factor "assesses the public benefit derived from the case." *Davy v. CIA*,

550 F.3d 1155, 1159 (D.C. Cir. 2008). The analysis "requires an *ex ante* assessment of

the potential public value of the information requested." *Morley*, 810 F.3d at 844. "[I]f

it's plausible ex ante that a request has a decent chance of yielding a public benefit, the

public-benefit analysis ends there." *Id.*

In this case, the public benefit factor strongly favors EPIC. EPIC sought the secret

procedure in the public interest as a "quintessential requestor of government information

envisioned by the FOIA." *EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013). The

issues addressed by EPIC's FOIA request—police accountability, the freedom to freely

associate and peacefully protest, and the scope of the government's role in shutting down

critical communications infrastructure—were matters of significant public concern. *See,*

*e.g.,* Zusha Elinson & Shoshana Walter, *Latest BART Shooting Prompts New Discussion*

*of Reforms*, N.Y. Times (July 16, 2011),[1] *After Cellphone Action, BART Faces Escalating*

*Protests*, N.Y. Times (Aug. 20, 2011);[2] Timothy B. Lee, *Gov't Didn't Shut Down Cell*

*Networks in Boston—But It Could Have*, Ars Technica (April 16, 2013);[3] Dana

Liebelson, *The Government's Secret Plan to Shut Off Cellphones and the Internet,*

*Explained*, Mother Jones (Nov. 26, 2013).[4] Because EPIC's FOIA request for SOP 303

had a "probability of generating useful new information about a matter of public

concern," the public benefit factor favors EPIC. *Morley*, 810 F.3d at 844.

The public benefit factor also weighs in favor of a FOIA plaintiff where

dissemination of the information obtained is "likely to add to the fund of information that

citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115,

1120 (D.C. Cir. 1995) (internal citations omitted). As a result of EPIC's lawsuit, the DHS

released a previously secret document concerning government shutdowns of critical

communications networks, a document that is now subject to public debate. *See, e.g.,*

---

[1] http://www.nytimes.com/2011/07/17/us/17bcbart.html.
[2] http://www.nytimes.com/2011/08/21/us/21bcbart.html.
[3] http://arstechnica.com/tech-policy/2013/04/govt-didnt-shut-down-cell-networks-in-boston-but-it-could-have/.
[4] http://www.motherjones.com/politics/2013/11/internet-phone-kill-switch-explained.

Amadou Diallo, *Obama Administration Fights for Right to Uuse Cellphone Kill Switch*, Al Jazeera America (April 26, 2015);[5] David Kravets, *Will Supreme Court Force DHS to Divulge Secret Plan to Cut Cell Service?*, Ars Technica (Aug. 15, 2015),;[6] Steve Vladeck, *A FOIA Circuit Split That the Supreme Court Needs To Resolve*, Just Security (Dec. 23, 2015).[7] EPIC has also widely distributed SOP 303 so that it may be subject to public scrutiny. *See EPIC Urges Supreme Court to Review Cellphone Shutdown Case*, EPIC Alert (Dec. 22, 2015) (hereinafter EPIC Alert Article).[8]

The second and third entitlement factors also favor EPIC. The "nature of the [requester's] interest" factor is "closely related [to] and often considered together with the commercial benefit criterion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013). Favored interests are "scholarly, journalistic or public-interest oriented." *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was "wrong as a matter of law and an abuse of discretion").

EPIC is a 501(c)(3) non-profit public interest research center. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 5 (D.D.C. 2003). EPIC derived no commercial benefit from the

---

[5] http://america.aljazeera.com/articles/2015/4/26/obama-fights-for-secrecy-cellphone-kill-switch.html

[6] http://arstechnica.com/tech-policy/2015/08/will-supreme-court-force-dhs-to-divulge-secret-plan-to-cut-cell-service/.

[7] https://www.justsecurity.org/28485/foia-circuit-split-supreme-court-resolve/

[8] https://epic.org/alert/epic_alert_22.24.html. EPIC disseminated SOP 303 to epic.org visitors and the approximately 6,000 recipients of its bi-weekly newsletter. EPIC also maintains one of the world's most popular privacy websites: epic.org. EPIC has published extensively about SOP 303. *See* EPIC, *EPIC v. DHS – SOP 303* (2015), https://epic.org/foia/dhs/internet-kill-switch/.

FOIA request or lawsuit. The sole benefit was to the public, which benefited from the

disclosure of the documents released in this case. Thus, EPIC's interest in this matter is

squarely within the "scholarly, journalistic or public interest oriented" interests favored

by the statute. *See EPIC v. DHS,* 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (finding that

"[EPIC's] aims, which include dissemination of information regarding privacy issues to

the public . . . fall within the scholarly and public-interest oriented goals promoted by

FOIA").

Lastly, the fourth entitlement factor favors EPIC. The question is "whether the

agency has shown that it had any colorable or reasonable basis for not disclosing the

material until after [Plaintiff] filed suit." *Davy,* 550 F.3d at 1163. Courts have weighed

this factor in favor of the plaintiff when the agency failed to adequately explain the

withholding. *See Negley v. FBI,* 818 F. Supp. 2d 69, 75 (D.D.C. 2011) (finding agency's

failure to demonstrate it had a reasonable basis for refusing to release documents and

conduct searches "was exactly the kind of behavior the fee provision was enacted to

combat" (citing *Davy,* 550 F.3d at 1163)); *Pinson v. Lappin,* 806 F. Supp. 2d 230, 236

(D.D.C. 2011) (finding defendant's behavior unreasonable where "[o]nly after this

litigation did the [agency] fulfill its obligation under the FOIA" by releasing information

to plaintiff).

The DHS had no reasonable basis for refusing to disclose any documents in

response to EPIC's FOIA request nearly one year after it was submitted, thereby forcing

EPIC to file suit. The DHS likewise had no reasonable basis for withholding the

additional material it eventually disclosed in the second production of SOP 303. Because

the DHS had no "colorable or reasonable basis for not disclosing the material until after

[EPIC] filed suit," *Davy*, 550 F.3d at 1163, the fourth factor favors EPIC.

EPIC substantially prevailed in this matter, and all four entitlement factors favor

EPIC. The Court should thus grant EPIC's motion and award reasonable attorney's fees

and costs in this matter.

**II. The attorney's fees EPIC seeks are reasonable.**

EPIC seeks an award of $92,652.93 in attorney's fees and $463.82 in costs in this

matter, which is reasonable based on the hours worked and applicable billing rates.

To determine whether fees are reasonable, the court must consider (1) whether the

attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on

the case was reasonable—i.e.*,* did the attorneys waste or otherwise unnecessarily spend

time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011)

(quoting *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801

(D.C. Cir. 1998)).

Attorney's fees are calculated based on the "lodestar," which is the number of

hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates.

*Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether

plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886,

895 (1984). The fee requester bears the burden of establishing the reasonableness of the

hourly rates. *Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (citing

*Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995)). Courts in this

Circuit routinely employ the *Laffey* Matrix, a schedule of fees based on years of

experience for lawyers who practice "complex federal litigation." *Eley v. District of*

*Columbia*, 793 F.3d 97 (D.C. Cir. 2015); *see, e.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 23

(D.D.C. 2015) (affirming a FOIA fee award calculated using the *Laffey* matrix).

Because the *Laffey* matrix was compiled more than thirty years ago, *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 1516 (D.C. Cir. 1984), *overruled in part on other grounds en banc by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C.Cir.1988), it must be periodically updated to account for inflation. *Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015). Courts have previously considered several different methods for adjusting the *Laffey* matrix. *Compare Thomas v. District of Columbia*, 908 F. Supp. 2d 233 (D.D.C. 2012) (awarding fees based on USAO *Laffey* rates), *with Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014) (awarding fees based on LSI *Laffey* rates). Recently, the D.C. Circuit has concluded that the LSI-adjustment method is superior. *Salazar*, 809 F.3d at 64.

In *Salazar*, the D.C. Circuit determined that the rates generated by using the Legal Services Index ("LSI") of the Nationwide Consumer Price Index to update the *Laffey* matrix (the "LSI *Laffey* Matrix") are reasonable for complex federal litigation. *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64–65 (D.C. Cir. 2016). Courts in this Circuit have recognized that the LSI *Laffey* Matrix provides a reasonable estimation of billing rates for litigation in FOIA and other complex federal litigation. *See, e.g.*, *CREW v. DOJ*, 80 F. Supp. 3d 1, 3 (D.D.C. 2015) ("[T]he Court is persuaded that the LSI-adjusted Laffey matrix, while imperfect, offers a better methodology for estimating prevailing market rates for complex federal litigation in Washington, D.C."); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000) ("[T]he [LSI-updated] *Laffey* matrix more accurately reflects the prevailing rates for legal services in the D.C.

community."), *aff'd*, 809 F.3d 58 (D.C. Cir. 2015). *But see Poulsen v. DHS*, No. 13-498, 2016 WL 1091060, at *6 (D.D.C. Mar. 21, 2016) (failing to note the *Salazar* decision).

The LSI *Laffey* Matrix is "more likely to reflect the rate of change in prevailing legal services" than the USAO Laffey Matrix, it "more accurately reflects the conditions of competition for complex litigation," and it utilizes a more recent survey of rates as compared to the DOJ's version. Pl.'s Mot. Summ. J., Ex. E., Decl. Michael Kavanaugh at 7–10, *CREW v. DOJ*, 80 F. Supp. 3d 1 (D.D.C. 2015) ("CREW"). *See also* Tran Decl. ¶ 6. EPIC has accordingly used the LSI *Laffey* Rates to calculate the lodestar amount in this case. Tran Decl. ¶ 6.

The D.C. Circuit has held that "the second prong of the equation for calculating a fee award—the reasonableness of hourly rates awarded under fee-shifting statutes— consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (*citing Covington v. District Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). To recover, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

EPIC has provided complete, detailed billing records, Pl.'s Detailed Billing Records, Ex. G, which were contemporaneously recorded and accurately reflect the work done by each attorney. *See* Tran Decl. ¶ 8. The records reflect the date, time, and nature of each activity, and include details about the specific task performed. Ex. G. Each entry is clearly labeled with the name of the attorney performing the work, the attorney's rate,

the hours of work performed on the activity, and the total amount charged for the activity. *Id*. EPIC has therefore provided satisfactory billing records in this matter.

EPIC's request is further supported by affidavits from each attorney who worked on this case during the past four years. Aff. of Marc Rotenberg; Aff. of Ginger McCall; Aff. of Alan Jay Butler; Aff. of David Jacobs; Aff. of Julia Horwitz; Aff. of David Husband; Aff. of T. John Tran; Aff. of Aimee Thomson. EPIC's request for $350 in costs for filing in the District Court is supported by the case docket in which the clerk of the Court assigned receipt number 0090-3233293. EPIC also includes receipts for $113.82 in printing and mailing costs related to EPIC's Appellee brief in the D.C. Circuit. *See* Ex. G at 46–47.

Based on the 446.5 hours worked by EPIC's attorneys on this matter and the applicable LSI *Laffey* rates, the total lodestar amount for all work on this matter is $167,931.20. *See* Tran Decl. ¶ 12. EPIC has further reduced this lodestar amount based on reasonable billing judgment. *Id*. ¶¶ 10–11. EPIC accordingly requests a reasonable award of $92,652.93 for attorney's fees and $463.82 in costs in this matter.

**III. The Court should award EPIC "fees-on-fees."**

EPIC is also entitled to recover fees for its work to obtain fees in this matter. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012) (citations omitted); *see also EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases."). EPIC's attorneys dedicated 30 hours to obtaining fees in this matter. Tran Decl. ¶ 11. The Court should grant EPIC's motion and award fees-on-fees.

## CONCLUSION

EPIC has substantially prevailed in this case and is eligible for and entitled to recover fees under the FOIA. The award EPIC seeks is reasonable and supported by the attached declaration, affidavits, and billing records. EPIC therefore requests that the Court award it $92,652.93 in attorney's fees and $463.82 in costs.

Respectfully submitted,

MARC ROTENBERG (DC Bar # 422825)
EPIC Executive Director

ALAN BUTLER (DC Bar #1012128)
EPIC Senior Counsel

*/s/ T. John Tran*
T. JOHN TRAN (DC Bar #1027767)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
tran@epic.org
*Counsel for Plaintiff*

Dated: April 25, 2016