**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

ELECTRONIC PRIVACY          )
INFORMATION CENTER,         )
                            )
    Plaintiff,              )
                            )
    v.                      )     Case No. 1:13-CV-260 (JEB)
                            )
DEPARTMENT OF HOMELAND      )
SECURITY,                   )
                            )
    Defendant.              )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES AND COSTS**

**INTRODUCTION**

Plaintiff Electronic Privacy Information Center (EPIC) received one heavily

redacted 30-page document – Standard Operating Procedure 303 (SOP 303) – in

this Freedom of Information Act (FOIA) case.  Moreover, EPIC lost before the D.C.

Circuit on the issue at the center of the case, as the court of appeals upheld the

defendant Department of Homeland Security's (DHS's) decision to withhold

material from SOP 303 under Exemption 7.  Nonetheless, nine months after this

Court entered judgment (following a brief period of post-remand proceedings),

plaintiff filed its motion for $93,116.75 in fees and costs – or about $3,100 per

mostly blank page of SOP 303.  That math does not add up.

The Court should deny plaintiff's motion for fees and costs.  First, plaintiff's

fee motion should be denied because it is untimely.  Federal Rule of Civil Procedure

1

54(d)(2)(B)(i) provides that, with exceptions not relevant here, a motion for fees and costs must "be filed no later 14 days after the entry of judgment."  As noted above, plaintiff filed its motion more than nine months after the Court entered judgment.

Second, the Court should "deny [the request] in its entirety" because EPIC has sought an "outrageously unreasonable" amount.  *Envtl. Def. Fund Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993).  Denying it would deter plaintiffs from making such unreasonable fee demands, *id.*, and this sanction is particularly appropriate here because EPIC has already been warned about the kind of billing practices that led to this huge request, *EPIC v. DHS*, 982 F. Supp. 2d 56, 64 n.3 (D.D.C. 2013) ("This Court would not like to see EPIC bill a case in this way again.").  How exactly did plaintiff end up with such a high number?  There are a lot of reasons.  In addition to flaws attendant to individual billing entries, EPIC's request suffers from the following global defects:  It does not properly account for plaintiff's lack of success on the merits; it ignores the overstaffing of the case; it relies on hourly billing rates that do not accord with reality; and it includes a request for fees on fees that is grossly disproportionate to any entitlement plaintiff may have to fees on the merits of the litigation.

If the Court declines to reduce plaintiff's award to zero notwithstanding the untenable size of its request, plaintiff should be awarded no more than $2,607.22 in fees and costs in recognition of the billing problems highlighted above and detailed below.

## BACKGROUND

Plaintiff submitted a FOIA request for records related to the shutdown and restoration process used by commercial and private wireless networks during certain kinds of emergencies.  Compl. ¶ 2.   The agency initially concluded that it did not have any responsive records.  *Id.* ¶ 27.  Plaintiff administratively appealed that decision and then filed the complaint.  *Id.* ¶ 28.  The agency located a single responsive document, SOP 303, and it provided non-exempt portions of the 30-page document to plaintiff on the same day that it filed for summary judgment.  Def. Mem. in Support of Summ. J. (SJ Mem.), ECF Dckt. No. 10, June 28, 2013, at 2.

Defendant invoked Exemptions 7(E) and 7(F) over large portions of SOP 303, arguing that the release of the redacted information "would disclose techniques and procedures for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E), and  "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F).  SJ Mem. at 8-13.  (The agency invoked the exemptions in parallel, *i.e.*, any information redacted under 7(E) was also redacted under 7(F), and vice versa.)  Plaintiff challenged the invocation of these exemptions and argued that defendant could segregate out and release additional information.  EPIC's Cross Motion for Summ. J. (Pl.'s SJ Cross Motion), ECF Dckt. No. 11, July 26, 2013.  In particular, plaintiff emphasized that, in its view, the agency could segregate out and release the substantive standards used to determine when to shut down the networks – what plaintiff termed the

"predetermined shutdown questions." *See* Pl. Reply Br. in Support of Cross-Motion for Summ. J. (Pl.'s SJ Reply), ECF Dckt. No. 16, at 14-16.

The Court rejected defendant's arguments, ordering the agency to release SOP 303 without the redactions made under Exemptions 7(E) and 7(F), Memorandum Opinion, ECF Dckt. No. 19, Nov. 12, 2013, but it stayed its decision pending a ruling by the Court of appeals, Minute Order, Nov. 22, 2013.  On appeal, the D.C. Circuit reversed this Court's order.  *EPIC v. DHS*, 777 F.3d 518, 520 (D.C. Cir. 2015).  It upheld the invocation of Exemption 7(F) and declined to rule on Exemption 7(E), given that the exemptions were raised in parallel.  *Id.* at 528.  The circuit court remanded the case to this Court for a segregability review.  *Id.*

Following a post-remand status conference, defendant released a few additional portions of SOP 303 to plaintiff and provided the Court with both redacted and unredacted versions of the document for its review.  *Compare* Ex. 1 (first redacted version of SOP 303) (attached) *with* Ex. 2 (second redacted version) (attached).  After reviewing the unredacted version of the document and the version released to plaintiff following the remand – which did not reveal the substantive shutdown standards – the Court concluded that "DHS's segregation decisions have been liberal and erred on the side of disclosure.  As a result, consistent with the decision by the Court of Appeals, this Court does not find that any further information on these pages must be released.  The Court ORDERS, accordingly, that judgment is ENTERED in favor of Defendant."  Minute Order, July 10, 2015. Nine months after the Court entered judgment, plaintiff filed its fee motion.

4

## ARGUMENT

The Court should deny plaintiff's fee request because it is (i) untimely under Federal Rule of Civil Procedure 54(d)(2)(B)(i) and (ii) untenably large. If the Court does not deny the motion for these reasons, then plaintiff should be granted only $2,143.40 in fees (plus an additional $463.82 in costs), as plaintiff's requested amount of fees – $92,652.93 – is unreasonable and should be reduced for both global reasons and reasons related to individual billing entries.

### I.   Plaintiff's Fee Motion Is Untimely Under Rule 54

The Court should reject plaintiff's fee motion because it is untimely under Federal Rule of Civil Procedure 54(d)(2)(B)(i). That provision states that "[u]nless a statute or court order provides otherwise, the motion [for attorney's fees] must . . . be filed no later 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). The Court entered judgment on July 10, 2015. Minute Order, July 10, 2015 ("The Court ORDERS, accordingly, that judgment is ENTERED in favor of Defendant."). The FOIA statute does not provide a deadline different than Rule 54's deadline for filing a motion for attorney's fees. *See Squire v. Huntoon*, 2014 WL 3887190, at *1 (S.D.N.Y. July 15, 2014) (concluding that a motion for attorney's fees in a FOIA case was untimely under Rule 54 because it was not filed within 14 days of the entry of judgment). Nor did the Court issue an order setting a different deadline; indeed, plaintiff never even moved for an extension of the deadline.[1] Thus, the fee motion

---

[1]   Defendant did agree to a briefing schedule, but in doing so, it did not agree to waive any argument related to the timeliness of plaintiff's filing. Rather, defendant

was due by July 24, 2015.  Plaintiff filed it nine months later, on April 25, 2016.[2]
The motion is untimely and, therefore, should be denied.

II.  **Plaintiff's Fee Request Is Unreasonable**

To receive attorney's fees under the FOIA, plaintiff must demonstrate that it
is both eligible for and entitled to fees.  *Brayton v. Office of the U.S. Trade Rep.*, 641
F.3d 521, 524 (D.C. Cir. 2011); 5 U.S.C. § 552(a)(4)(E)(i).  Plaintiff is eligible to
receive attorney's fees if it "substantially prevailed" in the litigation.  *Brayton*, 641
F.3d at 524.  While there is reason to question whether receiving one heavily
redacted 30-page document counts as substantially prevailing, *McKinley v. Fed.
Housing Finance Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014) (noting that the district
court "doubted whether the receipt of two heavily redacted documents amount to
substantially prevailing"), defendant does not challenge plaintiff's eligibility for
fees.

To determine whether plaintiff is entitled to fees, the Court must consider the
following four factors: "(1) the public benefit derived from the case; (2) the
commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the
records; and (4) the reasonableness of the agency's withholding of the requested

---

consented to a schedule for briefing all of the issues related to a motion for fees –
including its (un)timeliness.

[2]    Plaintiff may argue (incorrectly) that judgment was not entered until the
Supreme Court denied its petition for certiorari.  But even if that were the case, the
motion for fees would be untimely because the Supreme Court denied certiorari on
January 11, 2016, *see* Supreme Court Order List, January 11, 2016 (available at
http://www.supremecourt.gov
/orders/courtorders/011116zor_n7io.pdf), more than three months before plaintiff
filed its motion for fees.

documents." *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C.Cir. 2008).  As with eligibility, there are reasons to question plaintiff's ability to satisfy this element.  For one thing, the public, in fact, derived no benefit from this case:  Plaintiff received one heavily redacted document and does not argue that information actually released benefitted the public.  *See McKinley*, 739 F.3d at 711 (upholding district court decision that documents "were so heavily redacted that they contributed only scant information to the public record"); Fee Mtn. at 7; *but see Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) (deciding that public benefit should be determined as an *ex ante* matter, regardless of the documents actually released).[3]  Indeed, the redacted version of SOP 303 did not include the information about the substantive shutdown standards that plaintiff sought.[4]  Pl.'s SJ Reply at 14-16.  Moreover, defendant was legally justified in withholding the majority of the document.  *EPIC v. DHS*, 777 F.3d at 520.  Thus, the only question is whether defendant was justified in withholding the information that it released after remand.  While this Court's minute order dismissing the case suggests that defendant's withholding was

---

[3]     Plaintiff argues instead, relying on *Morley*, that as an *ex ante* matter, it was possible the request could have benefitted the public. Fee Mtn. at 7.  *Morley* appears to be inconsistent with earlier decisions, like *McKinley*, but defendant recognizes that the Court is not in a position to resolve this apparent inconsistency.

[4]     Plaintiff suggests that SOP 303 was involved in the decision by Bay Area Rapid Transit (BART), which provides regional rail service in the San Francisco Bay Area, to shut down a wireless network serving BART property. Fee Mtn. at 2. But the Solicitor General's Office explained in its opposition to plaintiff's petition for certiorari that "[t]he Federal Communications Commission (FCC) and DHS have informed this Office that the 2011 incident did not involve SOP 303, and that BART officials shut down a network serving BART property without coordinating with the FCC or DHS."  Opposition to Petition for Writ of Certiorari, *EPIC v. DHS*, 15-196, Nov. 2015, at 2 n.1 (attached as Ex. 3).

justified (at least with respect to some of the information), Minute Order, July 10, 2015 (noting that "DHS's segregation decisions have been liberal and erred on the side of disclosure"), defendant does not challenge plaintiff's entitlement to fees.

Eligibility and entitlement alone cannot support the requested fee award. Plaintiff must demonstrate that its fee request is reasonable. *Am. Immigration Council v. DHS*, 82 F. Supp. 3d 396, 402 (D.D.C. 2015). The "usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C.Cir. 1998). Plaintiff's suggested lodestar amount of $92,652.93 – $80,759.88 for merits fees and $11,893.05 for fees on fees – is *not* reasonable and, assuming any fee award is not barred by Rule 54, it should be reduced to zero to deter such patently unreasonable billing practices. If the Court declines to zero out plaintiff's fee award, then plaintiff should receive no more than $2,143.40 in attorney's fees for the reasons set out below.

## A. EPIC's "[O]utrageously [U]nreasonable" Request Should Be Denied

The D.C. Circuit has recognized that a court "may deny in its entirety a request for an outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Envtl. Def. Fund*, 1 F.3d at 1258.

Such a sanction is warranted here for two reasons.  First, the request is "outrageously unreasonable."  *Id.*  As detailed below, EPIC's request – among other problems – bills out an attorney at higher rate than she is entitled to (as already determined by Judge Bates in another case, *EPIC v. DHS*, 999 F. Supp. 2d 61, 71-72 (D.D.C. 2013)), does not properly account for EPIC's lack of success (more than $90,000 for a heavily redacted 30-page document after a loss in the D.C. Circuit?), rests on billing records replete with evidence of overstaffing (multiple conferences about briefing schedules?) (Ex. G to Fee Mtn), and relies on outsized billing rates that do not reflect the actual rates realized by law firms (who would, unlike EPIC, write off the three hours spent by a new attorney on "research [of] scheduling practices,") (*id.* at 4), on which EPIC based its rates.

Second, EPIC has been warned about such conduct already:

> EPIC is now aware of the law. This Court would not like to see EPIC bill a case in this way again. After all, given EPIC's "complete failure to segregate expenses for claims on which it did not succeed, failure to discount its summary judgment fees in light of its minimal success, overstaffing this matter during later stages of the case, improper claims of attorney rates for staff not admitted to the bar, and [definite] double-billing," Def.'s Opp'n 32, this Court could have in its discretion refused to award any fees . . . .

*EPIC v. DHS*, 982 F. Supp. 2d at 65.  One warning is enough; consequences are in order.  Plaintiff should be awarded no fees or costs.

But, even if the Court declines to reduce EPIC's award to zero, it should cut 50% from plaintiff's award to deter it from continuing to engage in these practices, which are detailed below.  *See Envtl. Def. Fund*, 1 F.3d at 1258 ("In a case of less

egregious overbilling, we may impose a lesser sanction, such as awarding a fee below what a reasonable fee would have been in order to discourage fee petitioners from submitting an excessive request.").

Merits fees are addressed first below, followed by fees on fees.  The running totals in the sections below are presented for the sake of argument and the Court's ease, should it decline to zero out plaintiff's award notwithstanding the untimely and untenable nature of the request.

### B. <u>Reductions Tied to Individual Billing Entries</u>

1. <u>Travel Time</u>

Plaintiff requests $284.20 for Mr. Butler's travel to and from the status conference on June 22, 2015.  *See* Ex. G to Fee Mtn. at 16.  Mr. Butler billed his time at his claimed standard hourly rate.  *Id.*  But "[i]n this circuit, travel time is generally billed at no more than half of counsel's appropriate hourly rate."  *Reed v. District of Columbia*, 134 F. Supp. 3d 122, 153 (D.D.C. 2015).  Accordingly, this entry should be reduced to $142.10 before the application of the across-the-board reductions.  This reduction lowers the lodestar amount for merits fees to $80,617.88.

2. <u>Ms. Horwitz's Billing Rate</u>

The Court should reduce the billing entries related to Ms. Horwitz for the time period before June 9, 2013, as Judge Bates did in *EPIC v. DHS*, 999 F. Supp. 2d at 71-72 (reducing Ms. Horwitz's rate for period before June 9, 2013).  Ms. Horwitz billed her time prior June 9, 2013 at $312, the LSI-Laffey Matrix rate applicable to attorneys "1-3 years out of law school."  *Compare* Ex. G to Fee Mtn.

(billing record) at 1-7 *with* Ex. E to Fee Mtn. (LSI-Laffey matrix) and the Horwitz

Affidavit, ECF Dckt. No. 28-13.  But, as Judge Bates of has already concluded, Ms.

Horwitz was not 1 year out of law school until June 9, 2013, because she graduated

on June 9, 2012.  *EPIC v. DHS*, 999 F. Supp. 2d at 71-72, n. 17; Horwitz Aff.  In

other words, for the period before June 9, 2013, she was 0-1 years out of law school,

not 1-3 years out of law school.  Under the LSI-Laffey Matrix, however, "there is no

category for an attorney who has been admitted to practice law but who has less

than a full year of legal experience."  *Id.* at 72.  To account for this flaw, Judge

Bates "split the difference" between the rate for law clerks and the rate for

attorneys with 1-3 years of experience.  *Id.*  The same outcome is warranted here.

As the rate for law clerks for the applicable time period is $170, the proper standard

rate for Ms. Horwitz's time prior to June 9, 2013 – and prior to the applicable of the

across-the-board reductions – is $241 per hour.  Ms. Horwitz  billed 16.4 hours

prior to June 9, 2013.  *See* Ex. G to Fee Mtn.  Applying the $241 per-hour rate, the

lodestar for merits fees should be reduced by $1,164.40 to $79,453.48.

> 3.  Time Spent Reviewing SOP 303

Plaintiff included a request for fees for time spent reviewing the document

that it sought through this FOIA case, SOP 303.  Ex. G to Fee Mtn. at 8.  But this

Court has held that time spent reviewing the documents sought in a FOIA case is

not reimbursable.  *Am. Immigration Council v. DHS*, 82 F. Supp. 3d at 412 (holding

that "[p]laintiff is not entitled to recover for time spent reviewing the documents it

instituted [a] lawsuit to obtain"). Thus, the lodestar for any merits fees should be reduced by $64 to $79,389.48

### C. Bases for Reducing the Lodestar Amount Across the Board

#### 1. Lack of Success

The corrected lodestar of $79,389.48 for merits fees should be reduced by 91.5% based on plaintiff's lack of success in this litigation. "A plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award." *Judicial Watch v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006). "Thus, 'where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained,' *Hensley [v. Eckerhart*, 461 U.S. 424, 440 (1983)], excluding 'nonproductive time or ... time expended on issues on which [the] plaintiff ultimately did not prevail,' *Weisberg v. DOJ*, 745 F.2d 1476, 1499 (D.C.Cir.1984)." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012). When determining whether to reduce fees, courts assess whether the unsuccessful claims are related to any successful ones; if they are unrelated, "plaintiff may recover fees for work done only on successful claims." *EPIC v. U.S. Dep't of Homeland Security*, 982 F. Supp. 2d 56, 60 (D.D.C. 2013). When a "plaintiff does not allocate time between claims," the Court may "award a percentage of fees sought equal to the percentage of pages spent arguing the successful claims on the merits." *Id.*; *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 2007 U.S.App. LEXIS 2337, at *2–*4 (D.C. Cir. 2007).

Plaintiff received one heavily redacted 30-page document as a result of its

FOIA request.  Defendant invoked two exemptions as a basis for its redactions,

Exemptions 7E and 7F.  The exemptions were invoked over the same text.  In other

words, whenever the agency claimed Exemption 7E, it also claimed 7F – and vice

versa.  *See* SOP 303 (redacted) (Ex. 2).  Though this Court ruled for plaintiff with

respect to both exemptions, the D.C. Circuit reversed this Court's decision and ruled

in favor defendant.  *EPIC v. DHS*, 777 F.3d at 520.  It concluded that Exemption 7F

authorized redacting all or most of the withheld material, remanding for this Court

to perform a segregability analysis.  *Id.*  The D.C. Circuit did not address

Exemption 7E on appeal because it did not need to:  approving defendant's

invocation of Exemption 7F sufficed to support reversal.  *Id.* at 528.  As to

segregability, following defendant's release of several additional excerpts and an *in

camera* review of the documents, this Court concluded that "DHS's segregation

decisions have been liberal and erred on the side of disclosure.  As a result,

consistent with the decision by the Court of Appeals, this Court does not find that

any further information on these pages must be released.  The Court ORDERS,

accordingly, that judgment is ENTERED in favor of Defendant."  Minute Order,

July 10, 2015.

This outcome is not a basis for a $79,389.48 fee award.  EPIC did not prevail

on its challenge to defendant's redaction of material under Exemption 7E.  Plaintiff

argues that this Court's decision on that issue remains good law because the D.C.

Circuit did not address Exemption 7E.  Fee Mtn. at 7.  Plaintiff is mistaken:  The

D.C. Circuit reversed the original opinion in toto, including the portion dealing with 7E. *EPIC v. DHS*, 777 F.3d at 520. In other words, the time that EPIC spent on challenging the agency's invocation of Exemption 7E was "time expended on [an] issue[ ] on which [the] plaintiff ultimately did not prevail." *Weisberg*, 745 F.2d at 1499. And EPIC lost its challenge to the DHS's invocation of Exemption 7F. *Id.* at 528. In short, EPIC lost the war.

But Defendant did decide to segregate out and release a little more information on remand. The segregability issue is unrelated to EPIC's exemption arguments given that none of the work that plaintiff's counsel did on those arguments would have helped with the formulation of the segregability argument. Plaintiff's billing records do not indicate how much time plaintiff devoted to its segregability argument. *See* Ex. G to Fee Mtn. (billing records). Thus, the Court should "award a percentage of fees sought equal to the percentage of pages spent arguing [segregability]." *EPIC v. DHS*, 982 F. Supp. 2d at 60.

To be more specific, plaintiff should receive (if anything) only a percentage of fees based the pages spent developing the segregability argument related to the material released. EPIC devoted considerable space to the argument that the substantive criteria upon which shutdown decisions are made – what plaintiff terms "predetermined shutdown questions" – should be segregated and released. *See* Pl.'s SJ Reply, ECF Dckt. No. 16, at 14-16. But that segregability argument was fruitless, because that information was not released. *See* Ex. 2 (SOP 303) (redacted, second version); Minute Order, July 10, 2015 (upholding DHS's segregation

decisions).  Thus, EPIC should not receive any fees related to the substantive-standards segregability argument.

How much space did plaintiff devote to the more general segregability argument?  Not much:  1 of 11 pages of argument in its summary judgment brief (Pl.'s SJ Cross Mtn., ECF Dckt. No. 11, at 14-15), 1 of 14 ½ pages of argument in its reply brief in support of summary judgment (Pl.'s SJ Reply, ECF Dckt. No. 16, at 13), and 2 of 22 pages of argument in its appellate brief (Br. for Plaintiff-Appellee, Dckt. No. 14-5013, July 7, 2014, at 27-29).  In total, then, plaintiff devoted 4 of 47.5 pages of argument briefing – or about 8.5% – to the more general segregability argument.  Thus, plaintiff's lodestar amount for the merits should be reduced by 91.5%, dropping it from $79,389.48 to $6,748.11.

2.  Overstaffing

The lodestar should be further reduced by 35% because plaintiff overstaffed the case.  Eight attorneys from EPIC participated in this FOIA litigation.  *See* Ex. G to Fee Mtn.  This case did not require such a large phalanx of lawyers.  It involved one 30-page document and the propriety of two exemptions – 7E and 7F – claimed over parts of that document.  And there was no need to plow new legal ground, as prior decisions had addressed the application of these exemptions in similar circumstances.  *See U.S. News & World Report v. Dep't of Treasury*, 1986 U.S. Dist. LEXIS 27634, at *6-7 (D.D.C. March 26, 1986) (addressing 7E); *ACLU v. Dep't of Defense*, 543 F.3d 59, 66-83 (2d Cir. 2008) (addressing 7F).

This "[o]verstaffing . . . led to overbilling.  Plaintiff's time sheets are replete with conferences among co-counsel attempting to coordinate case strategy and instances in which multiple attorneys billed for performing the same task." *Am. Immigration Counsel*, 82 F. Supp. 3d at 411-12; *see also Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60 (D.D.C. 2013) ("Moreover, the Court will pay particularly close attention when many lawyers bill for a single task.").  Here are a few examples:  four EPIC attorneys billed for a "[c]onference to assess proposed briefing schedule," Ex. G. to Fee Mtn. at 5; the same four attorneys billed for an "[e]-mail to review proposed briefing schedule," *id.*; three attorneys later billed for a "[c]onference regarding briefing schedule," *id.* at 6; three attorneys billed for an "[e]-mail regarding call with opposing counsel," *id.*; and three attorneys billed for a "[c]onference regarding opposing counsels request for an extension," *id.* at 14.  This list of examples, while illustrative of the problem, is by no means exhaustive.  *See generally* Ex. G to Fee Mtn.

When faced with such overstaffing, a Court may decline to scrutinize each billing entry to save judicial resources.  Rather, the Court may impose an across-the-board reduction to counterbalance the overstaffing (and attendant overbilling). *Am. Immigration Counsel*, 82 F. Supp. 3d at 411 (reducing fees 25% in FOIA case to account for overstaffing) (collecting cases).  A 35% reduction of fees is appropriate in this case as a cure.  *Id.* (reducing fees by 25% and citing cases with reductions of 25% and 50%).  The lodestar for merits fees thus falls from $6,748.11 to $ 4,386.20.

3.  <u>Problems with the LSI-Laffey Matrix</u>

The $4,386.20 lodestar for merits fees should be reduced an additional 15% to account for flaws in the calculation of plaintiff's counsel's standard rates.  Because EPIC's attorneys are considered public interest lawyers, they do not have standard hourly rates on which to base a lodestar amount.  Accordingly, they look to the rates set out in the LSI-Laffey Matrix to establish their standard hourly rates.  These rates – and correspondingly the overall lodestar recovery – should be reduced by 15% for the reasons provided in *Citizens for Responsibility and Ethics in Washington (CREW) v. U.S. Dep't of Justice* (DOJ), 80 F. Supp. 3d 1, 4-5 (D.D.C. 2015) (Cooper) (reducing rates by 15% in a FOIA case).

The LSI-Laffey Matrix starts with an average of the rates charged in 1989 by certain law firms in Washington, D.C. for complex federal litigation. *CREW v. DOJ*, 80 F. Supp. 3d at 3.  It does not end there, however.  It attempts to update the rates to account for the passage of time by factoring in the legal services component of the Consumer Price Index (CPI).  *See* Ex. A to Fee Mtn. at 19.  Generally speaking, the CPI, which is calculated by the Department of Labor, reflects the "changes in the prices paid by urban consumers for a representative basket of goods and services." *See* http://www.bls.gov/cpi/.

Insofar as the LSI-Laffey Matrix builds from an average of standard rates charged by certain law firms, *i.e.*, the sticker price charged by those firms, it has significant limitations.  *CREW v. DOJ*, 80 F. Supp. 3d at 4-5.  Clients of firms "rarely pay" the standard rate, *id.*, just as a car buyer rarely pays the sticker price

for a car.  "Firms frequently discount their standard rates and, even after discounting, lower the effective rate further by writing off a portion of their billed hours to reflect attorney inefficiency and other considerations." *Id.*  Moreover, "firms do not always collect 100 percent of the fees they ultimately bill. For these reasons, reported rates surely overstate the actual fees that law firms are paid— and expect to be paid—for their services." *Id.*

Thus, to make the rates paid to public interest lawyers commensurate with those actually realized by law firms, the rates reflected in the LSI-Laffey Matrix need to be reduced.  *Id.*  The Court in *CREW v. DOJ*, also a FOIA case, reduced the rates set out in that index by 15% "to account for the differences between reported rates and actual law firm billing realization." *Id.*  Indeed, one need not strain to find entries in plaintiff's bill that should be written off (and which, thereby, support this 15% reduction), such as the following:  three hours for "research [of] scheduling practices," Ex. G to Fee Mtn. at 4, three hours to "[d]raft [a] status memo," *id.* , and 5.9 hours spent preparing for a status conference, *id.* at 15-16.  To account for unnecessary hours such as these (which law firms typically write off), as well as other factors that affect the rates actually realized by firms, the 15% reduction imposed in *CREW v. DOJ* is warranted here.  The resulting lodestar for merits fees is $3,728.27.

This lodestar amount, if not reduced to zero because of untimeliness and the unreasonable nature of the request, should be reduced an additional 50% to deter the conduct already criticized by the court in *EPIC v. DHS*, 982 F. Supp. 2d at 64 n.

3, such as failing to account for failure, overstaffing, and billing an attorney out at the wrong rate.  Applying that sanction yields a lodestar for merits fees of $1,864.14.

### D. Fees on Fees Should Be Reduced Commensurate with the Reduction in Merits Fees

Hours "devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985).  But the "fees on fees must be reasonable and not excessive." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012).  Plaintiff's request for $11,893.05 is excessive.  It dwarfs any entitlement to fees for the underlying litigation that EPIC may have:  As explained in this memorandum, assuming plaintiff should recover any fees, it should recover no more than $1,864.14 in fees for the underlying litigation.  This imbalance indicates that a reduction is necessary.  *EPIC v. FBI*, 80 F. Supp. 3d 149, 162-63 (D.D.C. 2015) (finding that a fees-on-fees award of 90% that which the Court is awarding on the merits is "excessive").

Reducing the fees-on-fees award to account for overstaffing and flaws in the LSI-Laffey Matrix – given that those defects affect the fees-on-fees to the same extent that they affect the fees on the merits – would partially trim the excess.  But these cuts would not fix the problem entirely, because they would not fully account for plaintiff's relative lack of success in recovering fees on the merits (because they do not capture plaintiff's lack of success on the merits) or the patently unreasonable nature of its request.  To account for plaintiff's lack of success in recovering fees on the merits and the untenable nature of its request, the Court should reduce any

fees-on-fees award commensurate with the reduction in plaintiff's request for fees on the merits. *See EPIC v. FBI*, 80 F. Supp. 3d at 163 (reducing fees-on-fees by the same percentage that fees on the merits were reduced); *EPIC v. DHS*, 982 F. Supp. 2d at 64 (same). Thus, plaintiff should receive about $279.26 in fees on fees ($11,893.05 *.085 [lack-of-success reduction] * .65 [overstaffing reduction] * .85 [LSI-Laffey Matrix realization-rates reduction] * .50 [unreasonableness sanction]).

### E. Total Fees and Costs

Plaintiff should not recover any fees and costs because its request is untimely and "outrageously unreasonable." But assuming plaintiff does receive an award, it should recover no more than $1,864.14 in fees for the merits and $279.26 in fees on fees, for a total of $2,143.40 in attorney's fees. Plaintiff also claims $463.82 in cost, which defendant does not challenge (except insofar as Rule 54 bars plaintiff's recovery of fees and costs). Taken together, plaintiff should receive – if anything – no more than $2,607.22 in fees and costs.

### CONCLUSION

For the reasons stated above, the Court should deny plaintiff's request for fees and costs because it is untimely and outrageously unreasonable. In the alternative, the Court should grant plaintiff no more than $2,607.22 in fees and costs.

DATED:  June 3, 2016                    Respectfully submitted,

                                        BENJAMIN C. MIZER

Principal Deputy Assistant Attorney
General

CHANNING PHILLIPS
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs
Branch, Civil Division

      /s/ Justin M. Sandberg
JUSTIN M. SANDBERG
(Ill. Bar No. 6278377)
Trial Attorney
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
20 Mass. Ave., NW, Rm. 7302
Washington, DC 20530
Phone:  (202) 514-5838
Fax:  (202) 616-8202
justin.sandberg@usdoj.gov

*Attorneys for Defendants*