IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER )<br><br>Plaintiff, )<br><br>v. )<br><br>DEPARTMENT OF HOMELAND SECURITY )<br><br>Defendant. ) | No. 1:13-cv-00260-JEB |

# REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

The Defendant Department of Homeland Security ("DHS") has conceded nearly all of the issues relevant to this Court's consideration of EPIC's motion for attorney's fees and costs. The DHS concedes that EPIC is eligible to recover attorney's fees. Mot. Opp'n to Pl.'s Mot. for Att'y's Fees & Costs 6, ECF No. 30 [hereinafter Def.'s Opp'n]. The DHS concedes that EPIC is entitled to recover attorney's fees under the D.C. Circuit's four-factor test. *Id.* 7. The DHS concedes that the LSI-Laffey Matrix provides a reasonable rate to calculate the lodestar amount. *Id.* 17. All that is left is an unsupported argument about the timing of EPIC's motion, frivolous claims about billing judgment, and a meritless argument about the "reasonableness" of EPIC's request.

The DHS's arguments fail, and EPIC's request is clearly reasonable. First, it was the agency, not EPIC, that failed to release reasonably segregable portions of the Government's cellphone shutdown policy until three years after EPIC's request. Second, this Court rejected the agency's Exemptions 7(E) and 7(F) claims in November 2013.

1

And third, the agency unilaterally changed its position and disclosed previously unreleased records on remand in July 2015, after EPIC defended the appeal to the D.C. Circuit. Contrary to the DHS's unsupported allegations, EPIC's fee request is both timely and reasonable. The Court should accordingly grant EPIC's motion for reasonable attorney's fees and costs.

**I.     EPIC's fee motion is timely.**

The defendant's contention that EPIC's fee motion is untimely runs contrary to established practice and is inconsistent with the record. Courts in this Circuit have routinely granted EPIC attorney's fees pursuant to motions filed more than 14 days after the court's entry of judgment. *E.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 223, 236 (D.D.C. 2015) (awarding EPIC attorney's fees in case where the D.C. Circuit issued its mandate on August 12, 2014 and EPIC filed its motion for attorney's fees on October 31, 2014); *EPIC v. TSA*, 982 F. Supp. 2d 53, 56 (D.D.C. 2013) (awarding EPIC attorney's fees in a case where the court issued a summary judgment order on March 7, 2013 and EPIC filed a motion for attorney's fees on May 1, 2013); *EPIC v. DHS*, 982 F. Supp. 2d 56, 65 (D.D.C. 2013) (awarding EPIC attorney's fees in a case where the court issued a summary judgment order on March 7, 2013 and EPIC filed a motion for attorney's fees on May 1, 2013); *EPIC v. DHS*, 999 F. Supp. 2d 61, 79 (D.D.C. 2013) (awarding EPIC attorney's fees in a case where the court issued a summary judgment order on March 4, 2013 and EPIC filed a motion for attorney's fees on April 10, 2013).

Motions for attorney's fees under the FOIA are traditionally resolved separately after the case has concluded; fee awards "are ancillary to the underlying action and survive independently under the court's equitable jurisdiction." *Carter v. Veterans*

*Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986); *see Harvey v. Lynch*, 123 F. Supp. 3d 3, 8 (D.D.C. 2015) ("The conclusion that this Court lacks jurisdiction [on mootness grounds] to hear Plaintiff's case, however, does not dispose of Plaintiff's request that he be paid his costs for bringing this action."); *cf. Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974) ("With the express vesting of equitable jurisdiction in the district court by [5 U.S.C. §] 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court."); *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms."). Even the Government concedes that courts possess equitable jurisdiction to assess FOIA fee claims. Dep't of Justice, *Guide to the Freedom of Information Act* 30 (last updated Jan. 29, 2015) (citing *Carter*).[1]

But even if the default fee motion schedule does apply, courts have the power to modify it because "by its very terms, the fourteen-day deadline of Rule 54 is not a fatal jurisdictional deadline." *Am. Immigration Council v. DHS*, No. 1:11-cv-01972, at *2 (D.D.C. Sept. 24, 2014) (memorandum opinion and order granting plaintiff's motion for briefing schedule to resolve attorney's fees issue in FOIA case) [hereinafter AIC Order]. This discretion is clear under the rule, which states that the deadline applies "[u]nless a statute or a *court order* provides otherwise." Fed. R. Civ. P. 54(d)(2)(B) (emphasis added); *accord* AIC Order at *2–*3. Here, the Court granted EPIC's joint motion and ordered EPIC to file the motion for attorney's fees by April 25, 2016. Min. Order (Apr. 5,

---

[1] https://www.justice.gov/sites/default/files/oip/pages/attachments/2015/01/29/attorney_ fees_sent_for_posting_january_29_2014.pdf#page=30.

2016). EPIC filed the fee motion on April 25, 2016, and therefore complied with this Court's order and the plain text of Rule 54. *See* AIC Order at *2–*3.

The only case the DHS cites to the contrary is an irrelevant district court case from another circuit. In *Squire v. Huntoon*, the court rejected a motion where plaintiff voluntarily dismissed his case, then waited two months before moving for attorney's fees. No. 13 CV 3986 VB, 2014 WL 3887190, at *1 (S.D.N.Y. July 15, 2014). Here, by contrast, the legal proceedings continued until February 5, 2016, at which time EPIC and the DHS had already begun good-faith fee negotiations.[2] As in *American Immigration Counsel*, EPIC promptly moved to set a briefing schedule after the parties could not reach a negotiated settlement. *See* AIC Order at *2 (granting plaintiff's motion for briefing schedule of attorney's fees filed five months after the court granted defendants summary judgment, where the parties engaged in good faith negotiations during the preceding five months); Joint Mot. Br. Schedule, ECF No. 27.

Because EPIC moved for attorney's fees only after concluding timely, good faith settlement negotiations and because this Court approved both parties' joint briefing schedule, EPIC's motion is timely.

---

[2] The U.S. Court of Appeals for District of Columbia Circuit issued its opinion on February 10, 2015, reversing this Court's opinion as to Exemption 7(F) and declining to address this Court's conclusion as to Exemption 7(E). EPIC timely filed for rehearing *en banc* on March 27, 2015, which the D.C. Circuit denied on May 13, 2015. On August 11, 2015, EPIC timely filed a petition for writ of certiorari as to Exemption 7(F) before the U.S. Supreme Court. The Supreme Court denied EPIC's petition on January 11, 2016. Pursuant to Supreme Court Rule 44(2), EPIC had until February 5, 2016, to file a petition for rehearing.

On January 27, 2016, EPIC contacted the DOJ attorney representing the DHS and proposed a joint status report informing the Court of fee negotiations. EPIC and the DHS then entered into good-faith fee negotiations, which ended unsuccessfully on March 29, 2016. EPIC promptly filed a joint motion for a briefing schedule of the attorney fees issue on April 5, 2016, which this Court granted the same day.

## II. The attorney's fees EPIC seeks are reasonable.

Contrary to the agency's assertions, the fees sought by EPIC are reasonable and represent work that was necessary to obtain success. The FOIA permits the recovery of "reasonable" attorney's fees. 5 U.S.C. § 552(a)(4)(E)(i). In this motion, EPIC seeks to recover for the necessary work of its attorneys prior to the agency's release of non-exempt responsive documents in June 2015. This includes work on the summary judgment cross motion, where the Court ruled entirely in EPIC's favor. Mem. Op., ECF No. ECF No. 19. This also includes work defending that favorable ruling against the DHS's appeal and time spent responding to the agency's picayune objections to this fee motion. *E.g.*, Def.'s Opp'n 11–12 (challenging $64 for time spent reviewing FOIA documents).

The DHS does not dispute, and therefore concedes, that EPIC's billing records are "contemporaneous, complete and standardized," and "accurately reflect the work done by each attorney." *CREW v. FEC*, 66 F. Supp. 3d. 134, 148 (D.D.C. 2014). Consequently, EPIC has "met its burden, through the submission of affidavits, declarations, and billing records, of establishing the reasonableness of the fees requested." *EPIC v. NSA*, 87 F. Supp. 3d 223, 235 (D.D.C. 2015). The burden now "shifts to the defendant to come forward with specific contrary evidence to rebut the presumption of reasonableness that inheres in the plaintiff's fee request." *Id.* (internal quotation marks omitted). But the evidence offered by the agency does not withstand close scrutiny. As a result, the agency cannot carry its burden to overcome the presumptive reasonableness of EPIC's fee motion. *Id.* at 229.

**A. The DHS provides no basis for disallowing fees in this case.**

The DHS's attempt to attack EPIC's good-faith billing practices is utterly baseless. EPIC has not engaged in any "outrageously unreasonable" conduct that would warrant a reduction in fees. Def.'s Opp'n 8. The agency cites only a single case in which a court identified minor issues with EPIC's billing but still awarded fees and costs. *EPIC v. DHS*, 982 F. Supp. 2d 56, 64 (D.D.C. 2013)).[3]

Courts have routinely granted EPIC's fee motions, and typically award EPIC nearly the full amounts sought. *See, e.g.*, *EPIC v. FBI*, 72 F. Supp. 3d 338, 356 (D.D.C. 2014) (awarding EPIC $19,923 in fees and $350 in costs when EPIC requested $21,774 in fees and $350 in costs); *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (awarding $29,841.67 in fees and $350 in costs when EPIC requested $37,197.75 in fees and costs); *EPIC v. DHS*, 892 F. Supp. 2d 28, 53 (D.D.C. 2012) (finding that EPIC was entitled and eligible to recover the full amount of its requested attorney's fees and costs). One court stated recently that EPIC's engages in "exactly the type of recordkeeping required for fee awards." *EPIC v. NSA*, 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

The DHS's assertion that EPIC's fee request should be disallowed is meritless and should be dismissed.

---

[3] The billing errors concerned (1) conferences related to a combined case were billed in both matters, and (2) one of EPIC's attorneys billed at the wrong *Laffey* rate. *Id.* at 63–64.

...

### B. EPIC's time spent on Exemptions 7(E) and 7(F) should not be further reduced.

EPIC's claims for work spent on Exemptions 7(E) and 7(F) are "reasonable," 5 U.S.C. § 552(a)(4)(E)(i), and should be upheld. EPIC has already exercised billing judgment and reduced the fee request accordingly. Decl. of T. John Tran, Bill of Fees and Costs, Ex. G 1–2, ECF No. 28-8 [hereinafter Ex. G]; Second Tran Decl. ¶ 5. The agency's assertion that EPIC should receive "only a percentage of fees based [on] the pages spent developing the segregability argument," Def.'s Opp'n at 14, is wrong for at least two reasons.

First, the cases cited by the DHS offer no support for the agency's specious assertion that EPIC may not recover for time spent briefing Exemptions 7(E) and 7(F). To the contrary, those cases support EPIC's claim. In considering the reasonableness of a fee claim, a court should exclude hours spent on unsuccessful claims that are "distinct in all respects from his successful claims." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)). But "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. Related claims "involve a common core of facts or will be based on related legal theories" and thus "cannot be viewed as a series of discrete claims." *Id.* at 436 (emphasis added).

The agency's reliance on *Judicial Watch* is misplaced. In *Judicial Watch*, the D.C. Circuit affirmed a district court's decision to award a public-interest group fees for work on an unsuccessful discovery effort. *Judicial Watch*, 470 F.3d at 371. The panel concluded that the time spent on discovery, while ultimately unsuccessful, could not

7

"reasonably be viewed as divorced from or unrelated to Judicial Watch's principal FOIA claim." *Id.* Because "discovery was intended to facilitate Judicial Watch's lawful pursuit of its principal FOIA claim," the district court's decision to award fees for that work was proper. *Id.*

The same is true here. EPIC's arguments against the application of Exemptions 7(E) and 7(F) cannot be "reasonably divorced" from EPIC's argument on segregability. These arguments involved "a common core of facts" and "related legal theories," such that they "cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 440. It is beyond dispute that the three legal issues raised in this case—7(E), 7(F), and segregability—all shared a common core of facts: the contents of Standard Operating Procedure 303. EPIC's work analyzing SOP 303 and parsing its significance was performed to develop all three legal issues, and thus cannot be meaningfully segregated.

The highly related nature of the legal theories also counsels against viewing them as a "series of discrete claims." *Id.* EPIC's arguments on segregability, both in this Court and the D.C. Circuit, relied heavily on EPIC's position on Exemptions 7(E) and 7(F). *E.g.*, Pl.'s Mot. Summ. J. 15, ECF No. 11 (arguing that predetermined shutdown questions were not properly segregated because they did not fall under 7(E) or 7(F)); Pl.'s Reply Br. 15, ECF No. 16 (arguing that the DHS's failure to establish risk of harm as required by 7(E) and 7(F) demonstrated the agency's failure to segregate); Br. of Appellee 30 (same). EPIC's theories on 7(E) and 7(F) thus directly informed EPIC's theory on segregability.

Because EPIC's claims—applicability of the exemptions and segregability—shared a "common core of facts" and were "based on related legal theories," EPIC's work on 7(E) and 7(F) was reasonable and recoverable.

Second, while the D.C. Circuit reversed this Court's ruling, it limited its decision to the 7(F) determination, and left undisturbed the Court's analysis of 7(E). Although the DHS is correct that the D.C. Circuit reversed this Court's judgment, Def.'s Opp'n 14, the agency ignores this Court's 7(E) determination, obtained as a consequence of the litigation pursued by EPIC in this matter. Thus, contrary to the agency's assertion, EPIC's time spent disputing Exemption 7(E) was successful in establishing favorable precedent.

As to EPIC's work on 7(F) in this Court, EPIC, applying applicable case law at the time, prevailed completely. Mem. Op. 15. Until the D.C. Circuit's subsequent decision in *Pub. Employees for Envtl. Responsibility (PEER) v. U.S. Section, Int'l Boundary & Water Comm., U.S.-Mexico*, 740 F.3d 195 (D.C. Cir. 2014), this Court's ruling on summary judgment was firmly grounded in Circuit law. Also, EPIC's work on the D.C. Circuit appeal was entirely necessary to defend the Court's ruling and preserve EPIC's interest in the suit going forward. Although EPIC did not ultimately win the 7(F) argument, EPIC would never have obtained the wrongfully withheld portions of the document on remand if it had not pursued the appeal. Further, the DHS's decision to release additional portions of SOP 303 after the D.C. Circuit's ruling further underscores the significance (and reasonableness) of EPIC's work. Absent a concession from the DHS that it lacked good faith in applying FOIA exemptions to the first release of SOP 303, it was EPIC's work that secured this Court's 7(E) ruling and led to the D.C.

Circuit's 7(F) ruling, which in turn provided the basis for the agency's decision to release additional material. Notice of In Camera Filing (July 6, 2015), ECF No. 25. Because EPIC's work resulted in favorable case law, and caused the Government to disclose material it initially withheld, the fees for that work are reasonable.

### C. EPIC's FOIA litigation was not overstaffed.

The DHS's claim that EPIC employed a "phalanx of lawyers" to litigate this case, Def.'s Opp'n 15, is clearly false and based on a misconstruction of this case's history. EPIC's work in this case began on February 19, 2013, eight days before EPIC filed the Complaint. Ex. G. The litigation has, to-date, spanned nearly three years and four months. Although EPIC submitted billing records for eight attorneys (most of whom are recent law school graduates), only two of these attorneys have worked at EPIC during the full pendency of the litigation, much less worked on the litigation itself:

- Aimee Thomson (recent graduate): Joined EPIC on September 1, 2015. She began working on the appellate stage of this case on December 9, 2015.

- T. John Tran (recent graduate): Joined EPIC on September 2, 2014. He began working on the appellate stage of this case on October 2, 2014.

- David Husband (recent graduate): Joined EPIC on September 1, 2013 and left EPIC on July 30, 2014. He worked on the appellate stage of this case from June 24, 2014 to July 27, 2014.

- Julia Horwitz (recent graduate): Was working at EPIC at the beginning of the litigation but left EPIC on August 14, 2015. She worked on the district court and appellate phases of this case from February 19, 2013 to July 21, 2014.

- David Jacobs (recent graduate): Was working at EPIC at the start of the litigation but left EPIC on January 31, 2014. He worked on the district court phase of this case from February 20, 2013 to November 21, 2013.

- Ginger McCall (FOIA Counsel): Was working at EPIC at the start of the litigation but left EPIC on May 30, 2015. She worked on the district court and appellate phase of this case from February 20, 2013 to June 27, 2014.

- Alan Butler (Senior Counsel): Has worked at EPIC during the pendency of the litigation. However, he only began working on this case on March 25, 2014, when it reached the appellate stage.

- Marc Rotenberg (Executive Director): Has worked at EPIC, and on the litigation, during the full pendency of the litigation.

Second Tran Decl. 6.

Contrary to the DHS's assertions, no more than two senior EPIC attorneys and two junior EPIC attorneys were billing hours for almost the entire pendency of the case. Additionally, the agency's claim that the case presented no new legal issues rings hollow when it cites as an example the very Second Circuit case that EPIC unsuccessfully urged the D.C. Circuit to adopt. Def.'s Opp'n 15.

The DHS's allegations of overbilling are likewise without merit. The agency's examples of overbilling are for conferences and emails—events that by definition require the presence of more than one person. A closer look at the DHS's examples reveals a 12-minute conference on May 3, 2013, to discuss a proposed briefing schedule. Ex. G. EPIC staff followed the meeting by reviewing an email discussing the proposed briefing schedule, which they billed at the lowest increment of six minutes per attorney. *Id.* Five

days later, three EPIC staff discussed the briefing for 18 minutes in response to the call with opposing counsel mentioned on May 7, 2013. *Id.*

These short meetings are eminently reasonable. Moreover, courts strongly dissuade "such a picayune review of the subjective reasonableness of the number of attorneys who participated" in an email thread or conference, which is, "quite simply, unnecessary and a waste of judicial resources." *EPIC v. NSA*, 87 F. Supp. 3d at 235. Courts in the D.C. Circuit have recognized as axiomatic that "'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Because EPIC did not overstaff this case, the DHS's proposed 35% reduction in fees is unwarranted.

### D. EPIC's application of billing judgment precludes further reductions in the LSI-Laffey Matrix rates.

The DHS's argument that EPIC's fee amount should be reduced by an additional 15%, Def.'s Opp'n 17–18, fails to recognize that EPIC has already "account[ed] for the differences between reported rates and actual law firm billing realization" by applying across the board billing judgment similar to what the court did in *CREW v. DOJ*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015). The Supreme Court has defined "billing judgment" as "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Applicants for attorney's fees must exercise billing judgment "just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.*

EPIC has applied a 5% reduction of the total fee request as an exercise in billing judgment, and this is more than enough to account for any time that could have been deemed "excessive, redundant, or otherwise unnecessary." *Id.*; *see* Ex. G 1 ("Discount factor"). That this number is less than the 15% reduction made in *CREW v. DOJ* is irrelevant: "[B]illing judgment is just that—judgment." *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011). Neither the DHS nor *CREW v. DOJ* cite any authority mandating a precise 15% reduction for billing judgment in FOIA fees cases.

Because EPIC properly applied billing judgment in the initial fee petition, the Court should reject the DHS's proposed 15% reduction. Moreover, because EPIC exercised billing judgment from the outset, an additional 50% sanction is wholly unwarranted.

### E. The DHS's minute criticisms of several individual billing entries do not withstand close scrutiny.

The DHS's demands for reductions to individual entries in EPIC's billing records are nothing more than an attempt to force the court into the role of a "green-eyeshade accountant[]" *EPIC v. NSA*, 87 F. Supp. 3d at 235 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The agency's demands are an unreasonable waste of time and should be rejected.

First, regarding Ms. Horwitz's billing rate, the agency has previously conceded that the relevant rate applies to first year attorneys. After Judge Bates urged the U.S. Attorney's Office to correct the ambiguity in the *Laffey* Matrix in *EPIC v. DHS*, 999 F. Supp. 2d 61, 72 (D.D.C. 2013), the USAO obliged. In the 2014-2015 *Laffey* Matrix, the Government clarified that "the '1–3 years' bracket is generally applicable to attorneys in their first, second, and third years after graduation from law school, and the '4–7 years'

13

bracket generally becomes applicable on the third anniversary of the attorney's graduation (i.e., at the beginning of the fourth year following law school)." DOJ, *Laffey Matrix 2014–2015*, at n.2.[4] Therefore, EPIC properly billed all of Ms. Horwitz's hours at the rate applicable to attorneys 1–3 years out of law school.

Second, regarding the review of SOP 303, several courts in the D.C. Circuit have allowed EPIC to recover for time spent reviewing documents produced as a result of the litigation, because EPIC must determine whether the search was adequate and whether the claimed exemptions are appropriate—determinations related solely to the litigation. *E.g., EPIC v. FBI*, 72 F. Supp. 3d 338, 351 (D.D.C. 2014) ("[T]he time EPIC spent reviewing the FBI's document production, including the time spent resolving a non-sequential document issue, was reasonably incurred in litigating this case."); *EPIC v. DHS*, 999 F. Supp. 2d 61, 75 (D.D.C. 2013) ("EPIC is only seeking fees for review of documents produced during this litigation, and the DHS has failed to provide any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of litigating this case. Accordingly, the Court finds that EPIC is entitled to fees generated during this work."). EPIC only bills for time spent reviewing documents when the review is relevant to the underlying litigation, and EPIC spends considerably more time reviewing documents disclosed by FOIA than it bills. Second Tran Decl. 7.

Finally, regarding Mr. Butler's travel to a status conference, EPIC does not dispute that the travel time should billed at half of the counsel's appropriate hourly rate. Def.'s Opp'n 10; *see Reed v. D.C.*, 134 F. Supp. 3d 122, 153 (D.D.C. 2015). However, as previously noted, EPIC already accounted for any inadvertent disparities in the lodestar

---

[4] https://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf.

by reducing total fee request by 5%. DHS disputes $142.10, but EPIC's billing judgment has reduced EPIC's fee request by more than $4,800. Ex. G. The agency's request for an additional reduction of $142.10 is therefore duplicative, unnecessary, and a waste of judicial resources.

### III. The Court should award EPIC fees-on-fees.

It is "'is settled in this circuit' that '[h]ours reasonably devoted to a request for fees are compensable,'" provided they are reasonable. *EPIC v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (citing *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985) (modification in the original)). Moreover, EPIC is entitled to $14,204.30 in fees incurred in the production of this Reply brief because the DHS has "raised a variety of threshold and substantive objections to fees" to which EPIC has "appropriately responded." *Am. Immigration Council v. DHS*, 82 F. Supp. 3d 396, 413 (D.D.C. 2015) (finding that plaintiff's request for fees-on-fees, which included successful litigation on whether plaintiff was even eligible for and entitled to attorney's fees, was "not excessive" and was "reasonably devoted to its request for fees" (internal quotation marks and alterations omitted)).

### CONCLUSION

EPIC is eligible for and entitled to recover its fees and costs from the DHS in this matter. EPIC's fees are reasonable and supported by the proper documentation. The Court should award EPIC $ $92,652.93 in fees, $463.82 in costs, and $14,204.30 for time spent preparing this Reply, as documented in the Exhibits attached to EPIC's Motion for Fees and Costs and the Exhibit attached to this Reply.

Respectfully submitted,

MARC ROTENBERG (DC Bar # 422825)
EPIC Executive Director

ALAN BUTLER (DC Bar #1012128)
EPIC Senior Counsel

*/s/ T. John Tran*
T. JOHN TRAN (DC Bar #1027767)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
tran@epic.org
*Counsel for Plaintiff*

Dated: June 17, 2016