## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY<br>INFORMATION CENTER,<br><br>    Plaintiff,<br><br>        v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY,<br><br>    Defendant. | Civil Action No. 13-260 (JEB) |

## MEMORANDUM OPINION

In July 2012, the Electronic Privacy Information Center submitted a Freedom of Information Act request to the Department of Homeland Security. EPIC sought information relating to Standard Operating Procedure 303, a document that describes DHS protocols for shutting down wireless networks during national emergencies. After the Agency told EPIC that it could not locate any responsive records, Plaintiff administratively appealed and eventually filed suit here. Although Defendant then released a heavily redacted version of SOP 303, EPIC wanted more. While EPIC temporarily prevailed in this Court, the Court of Appeals ultimately held that full release was not required, but remanded for a segregability analysis. After Defendant removed some redactions, this Court approved and closed the case.

EPIC now asks for attorney fees and costs. Because Defendant concedes that Plaintiff is eligible for and entitled to some reimbursement, the Court will grant Plaintiff's Motion for Attorney Fees in part. Plaintiff's requested sum, however, will be significantly reduced to account for the limited nature of its success and for various billing-related deficiencies.

### I.      Background

As past Opinions detail the background of this suit, see EPIC v. DHS (EPIC II), 777 F.3d

518, 520-22 (D.C. Cir. 2015), the Court recounts here only facts relevant to the pending Motion.

In July 2012, EPIC submitted a FOIA request to DHS for:

1.      The full text of Standard Operating Procedure 303;

2.      The full text of the pre-determined "series of questions"
        that determines if a shutdown is necessary;

3.      Any executing protocols or guidelines related to the
        implementation of Standard Operating Procedure 303,
        distributed to DHS, other federal agencies, or private
        companies, including protocols related to oversight of
        shutdown determinations.

MSJ, Exh. 1 (July 10, 2012, Letter from Amie Stepanovich to DHS) at 3.  DHS wrote back that it

had "conducted a comprehensive search of files within the DHS" and other offices, but,

"[u]nfortunately, . . . w[as] unable to locate or identify any responsive records." Id., Exh. 3

(August 21, 2012, Letter from Mia Day to Amie Stepanovich) at 1.

Challenging the adequacy of DHS's search – especially given that SOP 303's existence

was public knowledge – EPIC filed an administrative appeal. See id., Exh. 4 (September 13,

2012, Letter from Amie Stepanovich to DHS); Opp. to MSJ, Exh. 1 (October, 25, 2012, Letter

from James Holzer to Amie Stepanovich).  FOIA's twenty-day appeal period quickly passed

without further action from DHS, and so in February 2013, EPIC filed suit in this court. See 5

U.S.C § 552(a)(6)(A)(ii).

While this case was pending, the administrative law judge in EPIC's administrative

appeal decided that DHS's record "fails to demonstrate that [DHS] conducted an adequate search

for responsive records" and remanded EPIC's FOIA request for further review. See MSJ, Exh. 5

(March 25, 2013, Letter from Joanna Sherry to Amie Stepanovich) at 1.

That administrative decision, however, did not end matters. DHS located SOP 303 after conducting a more extensive search. But, in June 2013, the Agency produced to EPIC only a heavily redacted version of the document. Defendant withheld under FOIA Exemptions 7(E) and 7(F) all but four sentences of the substantive portions of SOP 303. See Opp., Exh. 1 (First SOP 303) at 1-7; see also 5 U.S.C. § 552(b)(7)(E), (F).

Summary-judgment briefing then focused on DHS's reliance on those law-enforcement-related exemptions. While this Court sided with Plaintiff, EPIC v. DHS (EPIC I), 999 F. Supp. 2d 24 (D.D.C. 2013), the Circuit reversed and remanded for this Court to decide only whether non-exempt portions of SOP 303 could be segregated from exempt portions and then produced. EPIC II, 777 F.3d at 528. After remand, Defendant released a second version of SOP 303 with fewer redactions and provided the Court an unredacted copy for in camera review. See Opp., Exh. 2 (Second SOP 303) at 1-7. This Court then determined that no other pages needed to be released and entered judgment. See July 10, 2015, Minute Order. No appeal followed.

Plaintiff now seeks to recover attorney fees and other expenses associated with this litigation.

## II.     Analysis

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i); see Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011). "This language naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" Brayton, 641 F.3d at 524 (quoting Judicial Watch, Inc. v. Dep't of Commerce, 470 F.3d 363, 368-69 (D.C. Cir. 2006)). EPIC is "eligible" to receive fees if it has "substantially

prevailed." Id.; Judicial Watch v. Dep't of Commerce, 470 F.3d at 368.  If EPIC is eligible, the

Court must then "consider[] a variety of factors" to determine whether it is "entitled" to fees.

Brayton, 641 F.3d at 524-25; Davy v. CIA, 550 F.3d 1155, 1158 (D.C. Cir. 2008).  If EPIC is

both eligible for and entitled to receive fees, the Court proceeds to "analyze whether the amount

of the fee request is reasonable." EPIC v. DHS, 811 F. Supp. 2d 216, 237 (D.D.C. 2011).

Much of the attorney-fee legwork is done because DHS concedes both eligibility and

entitlement.  See Opp. at 7-8.  What it strenuously objects to, however, is the amount sought.

Before the Court addresses whether Plaintiff's requested fees are reasonable, it pauses to address

a threshold question of whether the Motion is timely.

A.  Timeliness

The Court first considers whether it is now too late for Plaintiff to request fees.  Federal

Rule of Civil Procedure 54(d)(2)(B)(i) provides that "[u]nless a statute or court order provides

otherwise, the motion [for attorney fees] must . . . be filed no later than 14 days after the entry of

judgment."  As DHS highlights, seasons have passed since the entry of judgment here in July

2015.  Yet, in March 2016, following months of failed negotiations between the parties, EPIC

filed a joint motion for a briefing schedule on attorney-fees issues, which the Court granted.  See

ECF No. 27 (Joint Motion for Briefing Schedule).

Under these circumstances, Rule 54 does not present an obstacle to Plaintiff's Motion.

"[B]y its very terms, the fourteen-day deadline of Rule 54 is not a fatal jurisdictional deadline."

Am. Immigration Council v. DHS, No. 11-1972, ECF No. 52 (Memorandum Order and Opinion)

at 2 (D.D.C. Sept. 24, 2014) (quoting Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 227 (2d Cir.

2004)).  In this case, a "court order provide[d] otherwise" – namely, this Court set an attorney-

fees briefing schedule, with which EPIC has complied.  See Fed. R. Civ. P. 54(d)(2)(B)(i); April

5, 2016, Minute Order; see also Am. Immigration Council v. DHS, 82 F. Supp. 3d 396, 402 (D.D.C. 2015) (noting that court's order setting briefing schedule satisfied Rule 54's requirement).  All the same, the Court observes that the delay in requesting attorney fees and in asking for a briefing schedule was not ideal – the Court has an interest in resolving fees issues when they "are freshly in mind," Radtke v. Caschetta, 822 F.3d 571, 574 (D.C. Cir. 2016) (quoting Fed. R. Civ. P. 54 advisory committee's notes) – and the Court trusts that EPIC will be more punctual in the future.  Having said this, the timing of Plaintiff's Motion is not fatal here.

    B.  Reasonableness of Fees

      The Court next addresses whether the sum EPIC seeks is reasonable.  The "usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998) (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).  Though the starting point is the lodestar amount, that number may then be adjusted to reflect, for instance, "the significance of the overall relief obtained by the plaintiff." Judicial Watch, Inc. v. DOJ, 774 F. Supp. 2d 225, 233 (D.D.C. 2011) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).  In parsing EPIC's billing entries, the Court is mindful "that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection.'" EPIC v. NSA, 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)).

      Plaintiff puts forth a figure of $81,223.70 for fees and costs in the FOIA litigation.  It further requests a surprising $26,097.35 for time spent litigating over attorney fees – i.e., "fees on fees."  Defendant asks for adjustments to the lodestar amount and for the Court to factor in

Plaintiff's lack of merits success.  The Court considers these two issues, then looks at fees on

fees, and ends by computing the fee award.

1.  *Lodestar*

In examining the lodestar amount, the Court first addresses a point of substantial

agreement – the hourly rates.  In fleshing out rates, this Circuit has frequently employed the

Laffey Matrix, "a schedule of fees based on years of attorney experience that was developed in

Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), rev'd on other grounds, 746

F.2d 4 (D.C. Cir. 1984)."  ACLU v. DHS, 810 F. Supp. 2d 267, 277 (D.D.C. 2011) (quoting

Judicial Watch v. DOJ, 774 F. Supp. 2d at 232).  Because the Laffey Matrix is now over thirty

years old, it is updated to reflect inflationary changes in the cost of legal services as reported by

the Legal Services Index of the National Consumer Price Index, resulting in the so-called "LSI

Laffey Matrix."  See, e.g., Salazar ex rel. Salazar v. District of Columbia, 809 F.3d 58, 62 (D.C.

Cir. 2015).

The parties agree that the LSI Laffey Matrix acts as a starting point.  See Opp. at 17.

Defendant does present a quibble  – namely, that one of EPIC's attorneys was identified as having

"1-3 years" experience on the matrix even though she had completed only one year of post-

graduate legal work.  This objection is not persuasive.  The Department of Justice has clarified

that "1-3 years" of experience refers to an attorney's first year to third year out of law school, not

to an attorney having completed one to three years.  See DOJ, Laffey Matrix – 2014-2015,

https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-

2015.pdf; accord Heller v. District of Columbia, 832 F. Supp. 2d 32, 41 n.4 (D.D.C. 2011).  The

Court therefore accepts the LSI Laffey Matrix hourly rates used by EPIC.

Next, DHS and EPIC engage in a battle of the ledgers over which hours were reasonable and which were not.  Defendant points to numerous instances of overbilling:  billing travel at the full (as opposed to half) hourly rate, time spent reviewing DHS's produced version of SOP 303, the presence of eight attorneys, and numerous conferences and e-mails with multiple attorneys.  These objections are at times picayune.  For example, snipping off the time spent reviewing SOP 303 would save only $64 – roughly, a .06% markdown of EPIC's total proposed bill.

The Court declines to follow DHS down this rabbit hole.  The goal in awarding fees is not line-item supervision of billing practices but "rough justice."  EPIC v. NSA, 87 F. Supp. 3d at 235.  In that spirit, the Court recognizes that there are indeed inefficiencies in Plaintiff's work.  EPIC bills for multiple instances of three attorneys' reviewing this Court's one-sentence minute orders (sometimes the same minute order twice a day and sometimes for minute orders scheduling status hearings).  See, e.g., Mot., Exh. G (Bill of Fees and Costs) at 17-19.  Almost every page of the bill is replete with two-, three-, four-, or (sometimes) five-attorney status conferences or e-mails.  A FOIA case, however, is fairly straightforward, and its "status" is easy to discern: once filed, the case typically proceeds to summary judgment.  See Thornton-Bey v. Exec. Office for U.S. Att'ys, 844 F. Supp. 2d 159, 161 (D.D.C. 2012).  Instead of blacklining the bill – e.g., two conferences instead of four, one attorney instead of three – the Court takes up Defendant's proposal to factor in these inefficiencies when considering how to discount the overall fee request.  See Opp. at 18-19.  In other words, the Court will write off a percentage of EPIC's bill "to reflect attorney inefficiency and other considerations."  CREW v. DOJ, 80 F. Supp. 3d 1, 5 (D.D.C. 2015).

The chief dispute over the lodestar revolves around the appropriate discount to apply.  Both sides agree that some discount is necessary, but each proposal is a foil for the other.  EPIC

suggests a 5% discount.  DHS proposes several discounts that, when multiplied together, result in a discount of over 95%: *inter alia*, a 35% reduction for inefficient staffing, a 15% reduction for the discount that private lawyers typically offer their clients, and an additional 50% as a deterrent for overbilling.   Neither of these approaches strikes the Court as appropriate, and it must thus make an independent determination.

Surveying the bill, the Court locates the main culprit: overstaffing.  See <u>AIC</u>, 82 F. Supp. 3d at 411-12.  Where it is easy for one attorney familiar with a case wholly her own to keep tabs on the docket, a group of attorneys might need to confer.  Where for one attorney a scheduling order might warrant a quick (and unbilled) calendar entry, a group of attorneys might wish to discuss logistics.  EPIC retorts that it staffed no more than four attorneys at a time.  <u>See</u> Reply at 11.  The first e-mail on the bill, however, reveals five.  <u>See</u> Bill of Fees and Costs at 3.  Even taking EPIC at its word, it is not apparent that four attorneys were needed.  This was a procedurally straightforward FOIA case about one relatively short document.  To counteract this overstaffing, the Court will apply to the lodestar – that is, to <u>all</u> of Plaintiff's attorney-fees billing entries – a 35% discount.  <u>See, e.g.</u>, <u>Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA</u>, 169 F.3d 755, 761-62 (D.C. Cir. 1999) (*per curiam*) (reducing fees sought by approximately 50% due to "multiple attorneys performing the same tasks").

## 2.   *Success on Merits*

After discounting the lodestar, the Court arrives at what Plaintiff would receive if it had <u>won</u> the case, start to finish.  EPIC did obtain SOP 303, but DHS redacted so much of the document that EPIC cannot be said to have emerged triumphant in the final analysis.

The Court, therefore, must consider Plaintiff's "overall success on the merits . . . in determining the reasonableness of a fee award."  <u>Judicial Watch v. Dep't of Commerce</u>, 470 F.3d

at 369.  "In cases involving multiple discrete claims or issues that can be considered separately, this rule requires that hours spent on any unsuccessful claims be excluded from compensation." Judicial Watch v. DOJ, 774 F. Supp. 2d at 233.  Even where there is a "core base of facts" underlying the issues, the Court may still exclude fees on an issue-by-issue basis when each issue has a "unique legal basis."  Nat'l Sec. Archive v. U.S. Dep't of Def., 530 F. Supp. 2d 198, 204 (D.D.C. 2008).

The Court first accounts for EPIC's successes.  Plaintiff filed its Complaint alleging that DHS had not made a reasonable search and that it had unlawfully withheld responsive records. Although Defendant perhaps turned over SOP 303 because of the administrative appeal and not because of the lawsuit, DHS does not challenge the causal nexus.  See generally AIC, 82 F. Supp. 3d at 403 (discussing causation requirement for eligibility).  From the Court's vantage point, Plaintiff sued and Defendant searched, yielding SOP 303.  EPIC obtained further, yet considerably reduced, success on remand after DHS removed a few redactions.  Accounting for these successes, the Court will compensate fully the time spent preparing the Complaint and litigating on remand.

The remaining proposed fees for the merits case generally include time spent on summary-judgment briefing, the appeal, and petitions for rehearing *en banc* and for writ of certiorari.  EPIC rightly does not seek compensation for the latter, unsuccessful petitions.  As for summary-judgment briefing and the appeal, EPIC succeeded to the extent that it convinced the Circuit to remand for consideration of segregability.  Plaintiff did not, however, succeed on the FOIA-exemption issues being litigated – that is, it did not convince the Circuit that SOP 303 should be substantially released.

The question then is how to calculate Plaintiff's limited success. While EPIC does not separate in its bill the time spent briefing segregability, DHS proposes a method: counting the pages EPIC spent briefing segregability in the argument sections of its briefs. The Court adopts this approach, though modifies DHS's shaky arithmetic. For the segregability issue, EPIC devoted:

- 3.5 pages out of 11 pages of argument in its summary-judgment opening brief, see SJ Opp. at 14-17;

- 3.5 pages out of 15 pages of argument in its summary-judgment reply brief, see SJ Reply at 6; and

- 4.5 pages out of 22 pages of argument in its appellee brief, see Appellee Br. at 27-31, No. 14-5013 (D.C. Cir. July 7, 2014).

In total, roughly 24% of argument in legal briefing was devoted to segregability. The Court will, accordingly, reduce Plaintiff's fees in preparing these briefs by 76%.

### 3. Fees on Fees

EPIC last seeks fees for briefing the instant Motion. DHS asks the Court to reduce the fees-on-fees award commensurate with reductions to merits fees. The Court obliges. Courts regularly conclude that fees on fees should be reduced to exclude time spent on unsuccessful fee requests. See, e.g., Nat'l Veterans Legal Servs. Program v. Dep't of Veterans Affairs, No. 96-1740, 1999 WL 33740260, at *5-6 (D.D.C. Apr. 13, 1999); see also Comm'r, INS v. Jean, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."). This Court, therefore, will award EPIC the same "percentage of fees for fee litigation as it does for fees on the merits." EPIC v. DHS, 982 F. Supp. 2d 56, 61 (D.D.C. 2013); accord Judicial Watch, Inc. v. DOJ, 878 F. Supp. 2d 225, 241 (D.D.C. 2012).

The Court, however, must also withhold fees on fees "where the plaintiff needlessly prolongs litigation." Jones ex rel. D.T. v. District of Columbia, No. 15-155, 2015 WL 9907797, at *5 (D.D.C. Oct. 29, 2015) (emphasis omitted). As discussed, Plaintiff waited long past the Rule 54 deadline before filing its present Motion. Significant chunks of EPIC's fees-on-fees request are essentially for prior failed efforts to extract fees through negotiation, divorced from any formal fee request. While the Court encourages parties to resolve their differences without motions, here EPIC's exorbitant demands seem to have unnecessarily prolonged this case. The Court will thus only accept as potentially recoverable the time spent after settlement talks fell through – that is, $5,764.40 for EPIC's Motion. See EPIC v. NSA, 87 F. Supp. 3d at 234 (declining to compensate wasteful negotiations).

Finally, because DHS had no opportunity to contest fees requested for drafting the fees Reply, the Court "scrutinizes them particularly carefully." EPIC v. FBI, 72 F. Supp. 3d 338, 355 (D.D.C. 2014). Here, EPIC requests $14,204.30 for the Reply. This amount is untenable. Plaintiff fails to clarify how it took 12 hours to draft and edit the Motion but 32.4 hours to draft, edit, and review the Reply. Compare Bill of Fees and Costs at 23-24, with Reply, Exh. 2 (Supplemental Bill of Fees and Costs) at 2-3. The two briefs were of comparable length. And DHS brought up only one wholly new issue in its Opposition – timeliness. EPIC presumably was familiar with other issues relating to the reasonableness of the fees. Considering the Reply was of similar complexity to the Motion, the Court grants the same fees for both. Cf. EPIC v. FBI, 80 F. Supp. 3d 149, 160-63 (D.D.C. 2015) (granting similar amounts for motion and reply).

4.   *Calculations*

Now, it's time for the math. The Court discounts the lodestar 35% to account for overstaffing, see *supra* Section B.1, and then adjusts based on EPIC's success. See *supra*

Section B.2. EPIC bills $4,524.60 for preparing the Complaint before March 16, 2013. With reductions, EPIC will receive:

$$\$4,524.60 \times .65 = \mathbf{\$2,940.99}$$

EPIC bills $3,482.80 for time spent on the segregability issue between June 2, 2015, and July 10, 2015. With reductions, EPIC will receive:

$$\$3,482.80 \times .65 = \mathbf{\$2,263.82}$$

EPIC bills $85,010.40 (less the above fees) for the remainder of the merits case. With a 76% reduction for lack of success, EPIC will receive:

$$(\$85,010.40 - \$4,524.60 - \$3,482.80) \times .24 \times .65 = \mathbf{\$12,012.47}$$

Next, the Court calculates how much Plaintiff's requested merits fees were <u>overall</u> reduced from what EPIC requested, a calculation that factors in the overstaffing discount:

$$\frac{\$2,940.99 + \$2,263.82 + \$12,012.47}{\$80,759.88} = \sim.2132$$

The Court applies this reduction of 21.32% to the fees-on-fees briefing:

$$(\$5,764.40 + \$5,764.40) \times .2132 = \mathbf{\$2,457.94}$$

Finally, to calculate the total fee award (together with **$469.82** in costs, which DHS accepts), the Court adds it all up as follows:

$$\$2,940.99 + \$2,263.82 + \$12,012.47 + \$2,457.94 + \$469.82 = \mathbf{\$20,145.04}$$

## III.   Conclusion

In sum, after tallying discounts and deductions, Plaintiff sought $107,321.05 in attorney fees and costs and will receive $20,145.04. A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 18, 2016